SERVICE CORPORATION INTERNATIONAL and SCI Texas Funeral Services, Inc., d/b/a Mont Meta Memorial Park, Petitioners,

v.

Juanita G. GUERRA, Julie Ann Ramirez, Gracie Little and Mary Esther Martinez, Respondents.

No. 09–0941.

Supreme Court of Texas.

Argued Dec. 19, 2010.

Decided June 17, 2011.

---

Mike A. Hatchell, Charles R. Watson Jr., Molly H. Hatchell, Locke Lord Bissell & Liddell LLP, Austin, Charles C. Murray, Lisa D. Powell, Adriana Hernandez Cardenas, Atlas & Hall, L.L.P., McAllen, Sarah B. Duncan, Kirsten M. Castaneda, Locke Lord Bissell & Liddell LLP, Austin, for Petitioners.

Richard G. Roth, Law Offices of Richard G. Roth, South Padre Island, J. Scott McLain, Kristin Ann Gaston, Reed, McLain & Guerrero, LLP, Mark L. Kincaid, Elizabeth Rose Von Kreisler, Kincaid & Horton, L.L.P., Austin, for Respondent.

Justice JOHNSON delivered the opinion of the Court.

In this appeal we address whether the evidence was sufficient to support jury

findings that (1) both the corporation that owned and operated a cemetery and its parent corporation were liable for actions of the cemetery's employees, and (2) the daughters and widow of a decedent suffered compensable mental anguish because the decedent's body was disinterred and moved to another grave without permission. We also address whether evidence of other lawsuits against the cemetery owner was properly admitted.

Marcos Guerra was buried at Mont Meta Memorial Park cemetery in a plot that had been sold to someone else. His family refused the cemetery's request that it be allowed to move the body to another burial plot, but the cemetery did so anyway. When family members discovered that Mr. Guerra's body had been moved, his daughters and widow sued both SCI Texas Funeral Services, Inc. d/b/a Mont Meta Memorial Park (SCI Texas), the corporation that owned and operated the cemetery, and its parent corporation, Service Corporation International (SCI International). Pursuant to a jury verdict, the trial court rendered judgment against both corporations for actual and exemplary damages. The court of appeals modified the judgment as to exemplary damages and otherwise affirmed.

We hold that there was legally insufficient evidence to support either the liability findings against SCI International or the mental anguish findings in favor of Mr. Guerra's daughters. We further hold that the trial court erred by admitting evidence of other lawsuits, verdicts, and judgments against SCI Texas. We reverse and render in part and remand for a new trial in part.

## I. Background

SCI Texas owns and operates several cemeteries in Texas, including Mont Meta Memorial Park in San Benito. Through an intermediary corporation not involved in this litigation, SCI Texas is wholly owned by SCI International.

When Mr. Guerra died unexpectedly on October 5, 2001, his family decided to have him buried at Mont Meta. Two of his three daughters, Julie Ann Ramirez and Gracie Little, went to Mont Meta and made funeral arrangements. Pursuant to the wishes of their mother, Juanita Guerra, Julie and Gracie arranged for Mrs. Guerra to purchase burial plots 5 and 5X at Mont Meta. One of the plots was to be used for Mr. Guerra and one was to eventually be used by Mrs. Guerra.

SCI Texas requires that before a burial takes place a "blind check" of the arrangements must be performed by an employee other than the employee who made the original arrangements. The blind check is to verify (1) the location of the burial plot to be used, (2) that the plot has not been previously sold, and (3) that no one is already buried in the plot. A Mont Meta employee performed the blind check on the day of Mr. Guerra's burial as part of her duties at Mont Meta. She concluded that the cemetery's records showed plot 5, where Mr. Guerra was to be buried, had been previously sold to another family. She brought this to the attention of her supervisor, who concluded that the burial could proceed because plot 5 had been quitclaimed to the Guerras.

Another Mont Meta employee reviewed the paperwork after the funeral and discovered that the supervisor had not been correct: plot 5 had not been quitclaimed to the Guerras. A Mont Meta employee contacted the Guerras and told them that the plot where Mr. Guerra was buried belonged to someone else. The Guerras met with Mont Meta's general manager, Jaye Gaspard, and declined his request that the cemetery be allowed to move Mr. Guerra's body to another plot.

Sometime after the meeting with Gaspard, the Guerras noticed that grass on Mr. Guerra's grave appeared to have been disturbed. They contacted Mont Meta about the situation. Gaspard responded with a letter in which he indicated that resodding had taken place in the cemetery and a passageway next to where Mr. Guerra was buried had been converted to a plot to ensure that a place beside Mr. Guerra was available for Mrs. Guerra. When the family received deeds for the plots they had purchased, however, the deeds were for plots 5X and 5XX rather than 5 and 5X. The Guerras suspected that Mr. Guerra's body had been moved and they filed a complaint with the Texas Funeral Commission. Six months later, Vicky Trevino, who was by then general manager at Mont Meta,[1] disclosed to the Guerras that they were correct: Mr. Guerra's body had been moved about 12 to 18 inches laterally into plot 5X.

Mrs. Guerra and her daughters Julie, Gracie, and Mary Ester Martinez (collectively, the Guerras) sued SCI Texas and SCI International. They asserted causes of action for fraud, intentional infliction of emotional distress, negligence, and trespass. A jury found in favor of the Guerras on the three liability theories submitted—intentional infliction of emotional distress, negligence, and trespass—and awarded damages of $2 million for past mental anguish to Mrs. Guerra, $100,000 for past mental anguish to each daughter, and allocated responsibility 70% to SCI International and 30% to SCI Texas. The jury also awarded exemplary damages of $3 million against SCI International and $1 million against SCI Texas, allocated 70% to Mrs. Guerra and 10% to each daughter.

Both defendants appealed. The court of appeals modified the judgment and reduced the exemplary damages to $750,000 for each defendant in accordance with the statutory cap, see TEX. CIV. PRAC. & REM. CODE § 41.008(b), but otherwise affirmed. 348 S.W.3d 221 at 226. In this Court the SCI entities argue that (1) there is no evidence to support the finding of liability as to SCI International; (2) there is no evidence to support the award of, or the amounts awarded for, mental anguish damages; (3) the trial court erred by admitting evidence of suits against other SCI Texas cemeteries and of a suit against and settlement entered into in Florida by SCI International; (4) two of the liability theories in the jury charge were not legally viable and it is impossible to determine if the jury awarded damages based on an invalid theory of liability because the charge contained only one damages question conditioned on an affirmative finding to any of the three liability questions; (5) the trial court erred by admitting testimony that Mrs. Guerra would put any punitive damages in a trust for use by people who cannot afford funerals; and (6) the jury's award of damages was influenced by an improper "Golden Rule" argument.

We begin by addressing the challenge to the legal sufficiency of the evidence as to SCI International.

## II. SCI International

The charge submitted three liability questions to the jury: (1) Did either of the Defendants intentionally inflict severe emotional distress on the Plaintiffs; (2) Did the negligence of either Defendant proximately cause the occurrence in question; and (3) Did either Defendant commit a trespass upon the property of the Plaintiffs?[2] Each question required the jury to

---

1. Gaspard died after the meeting with the Guerra family.

2. The Guerras did not assert veil-piercing theories such as alter ego or use of the corporate form to perpetuate a fraud.

answer separately for SCI International and SCI Texas, and the jury answered "Yes" as to each defendant for each question.

The Guerras argue that the testimony of several cemetery employees who said that they worked for "SCI" and records in Jaye Gaspard's personnel file with the SCI logo and referencing "Service Corporation International" are evidence that SCI International employed the Mont Meta workers and was therefore liable for their actions. We disagree.

### A. Standard of Review

■ A no-evidence challenge will be sustained when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Mtr. Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004). If, however, the evidence does no more than create a mere surmise or suspicion and is so slight as to necessarily make any inference a guess, then it is no evidence. *Id.* We presume that jurors made all inferences in favor of the verdict, but only if reasonable minds could do so. Jurors may not simply speculate that a particular inference arises from the evidence. *See City of Keller v. Wilson,* 168 S.W.3d 802, 821 (Tex.2005).

### B. Liability Findings

■ Corporations are liable for the negligence of corporate employees acting within the scope of their employment. *See*

*St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 541 (Tex.2002). But except for a few circumstances which the Guerras do not claim apply in this case, a corporation is not vicariously liable for the negligence of someone who is not its employee. *See id.* at 542–43 (noting that a person may be held liable for the actions of another if he has a certain degree of express or implied control over the actor).

■ SCI International first argues that because the jury charge did not contain a separate question asking if any of the actors were SCI International employees, the Guerras must have conclusively proved that they were employees because "all independent grounds of recovery ... not conclusively established under the evidence and no element of which is submitted or requested are waived." *See* TEX.R. CIV. P. 279. We disagree.

Whether the actors involved in this case were SCI International employees was not an independent ground of recovery; the actors' status as employees was an *element* of the Guerras' negligence claim against SCI International. *See Diamond Offshore Mgmt. Co. v. Guidry,* 171 S.W.3d 840, 844 (Tex.2005) (noting that when evidence is conflicting regarding whether an employee was acting in the scope of his employment at the time of an accident—a prerequisite for imposing vicarious liability—a jury finding is required); *see also* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE PJC 7.1 (Comment) (2006) (explaining that a question asking whether an actor is an employee of a defendant should be used "if there is a factual dispute about the employment element essential to a defendant's vicarious liability").

■ When an element of a claim is omitted from the jury charge without objection and no written findings are made

by the trial court on that element then the omitted element is deemed to have been found by the court in such manner as to support the judgment. Tex.R. Civ. P. 279; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002). Here there was no objection to the charge on the basis that it omitted the element nor did the trial court make findings on it, so there is a deemed finding in support of the judgment. But just as with any other finding, there must be evidence to support a deemed finding. Thus, we next address whether legally sufficient evidence supports the finding here. *See In re J.F.C.*, 96 S.W.3d at 276; *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex.1990).

## C. The Evidence

The Guerras assert that testimony from persons working at Mont Meta supports a finding that they were employed by SCI International. The Guerras point to testimony from several cemetery employees to the effect that they worked for "SCI." For example, the Guerras reference testimony by a foreman at Mont Meta who testified he was employed "[w]ith the SCI company," and testimony by the employee who worked with the Guerras to pick the burial plots that she was employed by "SCI." The Guerras also point out that Raymond McManness, who identified himself as "area vice-president," was asked by the Guerras' attorney about his employment with "SCI" and "SCI" having buried Mr. Guerra in the wrong spot, yet McManness did not clarify what "SCI" meant. Further, the Guerras reference testimony of Mont Meta's former general manager, Vicky Trevino.

■ We first address Trevino's testimony. At trial she affirmatively answered a question from the Guerras' attorney inquiring whether she stated in her deposition that she worked for "Service Corporation International, SCI." Although she made the acknowledgment in her trial testimony, her deposition testimony, which was shown to the jury in a video, was actually that Trevino was employed by "SCI." And during her trial cross examination about her deposition testimony, she did not waiver in maintaining that she worked for SCI Texas, SCI Texas operates Mont Meta, and SCI Texas employed the people who worked at Mont Meta. Taking her testimony in context, as we must, it is no evidence that Trevino or any of the other cemetery employees were employed by SCI International. *See City of Keller,* 168 S.W.3d at 812 ("[E]vidence cannot be taken out of context in a way that makes it seem to support a verdict when it in fact never did."); *Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 684 (Tex.2004) (holding that comments from deposition read out of context at trial were not evidence of a product defect when the comments were considered in context and clarified by the expert who made them).

■ Apart from Trevino's testimony, which we have determined was no evidence when properly considered in context, the testimony that the Guerras claim supports a finding that the cemetery workers were employed by SCI International were statements about "SCI." Both SCI entities had the initials SCI in their name and were referred to as SCI by witnesses and the attorneys throughout the trial. Statements that the workers were employed by "SCI" only allow for speculation that they were employed by SCI International. And findings based on evidence that allows for no more than speculation—a guess—are based on legally insufficient evidence. *See City of Keller,* 168 S.W.3d at 827 ("[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."). Thus, under this record, tes-

timony that "SCI" employed the cemetery workers is no evidence they were employed by SCI International.

■ The Guerras also point to testimony from a former family service counselor supervisor at Highland Memorial Park in Weslaco that he was employed by "Service Corporation International." According to the testimony, Highland Memorial Park was owned by "SCI." But there was no evidence that the Mont Meta workers had the same employer as the Highland Memorial Park workers, even assuming the Highland workers were employed by SCI International. The former Highland Memorial Park employee's testimony is no evidence that Service Corporation International employed the Mont Meta workers.

■ The court of appeals referenced the presence of the SCI logo on Jaye Gaspard's personnel paperwork as evidence that he was employed by SCI International. But in contrast to the Guerras' assertions as to SCI International's relationship to the cemetery employees, the President of SCI Texas, William O'Brien, testified that SCI Texas is a wholly owned subsidiary of SCI International; SCI Texas contracted with Mrs. Guerra; SCI International does not have any employees; SCI International does not own or operate any funeral homes or cemeteries; and SCI International's only assets are shares of stock in subsidiary companies. O'Brien also testified that all SCI-related businesses were authorized to use the SCI logo. Thus, the presence of the SCI logo on Gaspard's personnel documents was as consistent with employment by SCI Texas as it was with employment by SCI International, and the inference that SCI International employed Gaspard was no greater than the inference that SCI Texas employed him. Accordingly, the inferences were equal and the presence of the logo on the documents was legally insufficient to

support a finding that Gaspard was employed by SCI International. See id. at 813 ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred."); All Star Enters., Inc. v. Buchanan, 298 S.W.3d 404, 423–24 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (noting that under the equal inference rule, where the names of a number of affiliated companies began with "Antero Resources," invoices addressed to "Antero Resources" were no evidence that the vendors were referring to one particular company); see also BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex.2002) (finding that use of letterhead containing "BMC Software" by two corporations was not evidence that those corporations failed to observe corporate formalities where both corporations had "BMC Software" as part of their names).

■ The Guerras also assert that an "employee requisition" form in Jaye Gaspard's personnel file is evidence that Mont Meta's funeral director was employed by SCI International because the top of the form states "Service Corporation International." But the form also contained a blank space for "Location or Department Name" which stated "Mont Meta/Restlawn/Cox Funeral Home." William O'Brien explained that the form was supplied by SCI International but Mont Meta was making a requisition request for Mont Meta. He explicitly denied that the request was for someone to be employed by SCI International. Under this record, the "Service Corporation International" heading on the form was legally insufficient to support a finding that SCI International employed any of the Mont Meta workers.

Citing Wal-Mart Stores, Inc. v. Middleton, 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied), the Guerras also claim that SCI's failure to produce evidence that would show the Mont Meta

workers did not work for SCI International is itself evidence that they worked for SCI International. But *Middleton* is a spoliation case, and the Guerras have not asserted that spoliation of evidence was at issue here. *See id.* ("[T]he deliberate spoliation of evidence relevant to a case raises a presumption that the evidence would have been unfavorable to the cause of the spoliator."). Further, SCI presented direct evidence through the testimony of O'Brien, the President of SCI Texas, that the Mont Meta workers were not employed by SCI International.

In sum, we agree with SCI International that there was legally insufficient evidence to support liability findings against it. That determination requires judgment to be rendered in its favor. Therefore, we will not address SCI International further except as necessary to resolve the issues asserted by SCI Texas. For ease of reference SCI Texas generally will be referred to from now on as "SCI."

### III. Mental Anguish Damages

SCI claims there was legally insufficient evidence to support the jury's findings that the Guerras suffered compensable mental anguish, or in any event, to support the amount of damages awarded. We disagree in part. As to Mrs. Guerra, the evidence was sufficient to support some damages for mental anguish. As to Julie, Gracie, and Mary Ester, the evidence was legally insufficient to support any mental anguish damages.

### A. Nature of Evidence Required

Generally, an award of mental anguish damages must be supported by direct evidence that the nature, duration, and severity of mental anguish was sufficient to cause, and caused, either a substantial disruption in the plaintiff's daily routine or a high degree of mental pain and distress. *Bentley v. Bunton,* 94 S.W.3d 561, 606 (Tex.2002). Citing *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995), the court of appeals stated that such direct evidence is not necessarily required in cases involving particularly shocking or disturbing events or injuries because those events or injuries in and of themselves support an inference that mental anguish accompanied them. 348 S.W.3d at 247. The court noted that one such disturbing event we recognized in *Parkway* is the mishandling of a corpse. *Id.* The Guerras also assert that this is such a case—the events were particularly disturbing and upsetting, permitting the jury to infer mental anguish. They point to our citation in *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904, 907 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.), where we noted that the mishandling of a corpse involves disturbing events. *Parkway,* 901 S.W.2d at 443. But we cited *Wyatt* as an example of a case involving events that justified mental anguish damages; we did not cite *Wyatt* as a case in which the actions of the defendant or the occurrence itself constituted evidence of mental anguish that, absent other evidence, will support mental anguish damages. *Id.; see City of Tyler v. Likes,* 962 S.W.2d 489, 495 (Tex.1997) (citing *Wyatt* as an example of a contract case dealing with an intensely emotional subject and in which mental anguish is compensable and foreseeable if a duty is breached). Even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish is required. *See Bentley,* 94 S.W.3d at 606 (citing *Parkway,* 901 S.W.2d at 444); *Likes,* 962 S.W.2d at 495.

### B. The Daughters

There was little evidence from the daughters about how the events specifical-

ly affected them. Julie testified that "[t]his has been the hardest thing that I have had to go through with my family and myself. I have had lots of nights that I don't sleep just thinking" and that it had been "very difficult." In her complaint letter to the funeral commission she stated "I cannot begin to express the frustration and agony we have all gone through." She testified that she had continued to work, travel, and participate in volunteer and other activities.

Mary Ester's testimony about how the events affected her was briefer than Julie's. Mary Ester stated that "it's not part of my life. I didn't have to accept that and I do not accept it and I won't accept it."

Gracie's testimony about how she was affected was likewise cursory. She testified "[w]e're not at peace. We're always wondering. You know, we were always wondering where our father was. It was hard to hear how this company stole our father from his grave and moved him. That was hard. And I pray that none of you have to go through this."

The Guerras argue that evidence of the impact on the family also came from third parties. For example, the Mont Meta employee who helped the Guerras select the plots, testified that she believed the family was still bothered by the situation and having to move a body that was buried in the wrong place is devastating to any family that has just gone through the mourning process. The president of SCI Texas testified that the Guerras were "really hurt by this" and that there "certainly is a level of devastation within their family for this." The former manager of Mont Meta agreed that a family that had gone through what the Guerras had would suffer "devastation."

These witnesses generally acknowledged that the Guerra family members experienced very strong emotional reactions that would be expected from the unauthorized moving of a loved one's body. But none of the witnesses, including the daughters themselves, identified a specific "high degree of mental pain and distress" experienced by particular family members, or a substantial disruption of any particular family member's daily routine. The witnesses agreed with the Guerras' attorney that the family generally suffered "devastation," but generalized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages. *See Likes*, 962 S.W.2d at 495 ("The invasion of the same legal right may lead to extreme anguish in one person while causing essentially no emotional damage to another."); *Parkway*, 901 S.W.2d at 444 (noting that a factfinder should be provided with adequate details to assess mental anguish claims). The daughters' statements about their emotions, even combined with the statements of the other witnesses, did not support the jury finding that the events caused any of the daughters to suffer a substantial disruption of their daily routine or a high degree of mental pain and distress. *See Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 860–61 (Tex.1999) (finding no evidence supported mental anguish damages where claimant testified he had a lot of anguish, grief, severe disappointment, and embarrassment because those did not rise to a level of a high degree of mental pain and distress nor was there evidence of a substantial disruption of his daily routine).

In sum, the evidence was legally insufficient to support findings that any of the daughters suffered compensable mental anguish.

### C. Mrs. Juanita Guerra

■ Mrs. Guerra testified that when she found out her late husband's grave had

been tampered with she could not sleep at night and went through a lot of stress. She testified that she suffered burning in her stomach due to the stress and sought medical treatment for the symptoms. She continued to have headaches and take medication for anxiety and depression. She indicated that she had been worrying and having fear and anxiety about what might be done to her at Mont Meta for nearly six years since Mr. Guerra's casket was moved. We conclude that there is some evidence to support the jury's finding that Mrs. Guerra suffered the degree of mental pain and distress that will support damages for mental anguish.

SCI argues that Mrs. Guerra's daily routine was not substantially disrupted because she volunteers at a nursing home, participates in visitation with her church, works in the church kitchen, and travels occasionally. But even assuming there was no evidence her routine was disrupted, that lack of evidence did not negate the evidence that she *did* suffer compensable mental anguish. *See Wackenhut Corr. Corp. v. de la Rosa*, 305 S.W.3d 594, 640 (Tex.App.-Corpus Christi 2009, no pet.) (rejecting a claim that because children who had been awarded mental anguish damages were making good grades in school, they were not suffering mental anguish).

SCI asserts that there was confusion at trial regarding whether Mrs. Guerra's mental anguish concerned future anxiety for which the jury awarded no damages. It points to the Guerras' attorney's state-

ments such as "Mrs. Guerra's main anxiety concern is what is this company going to do to her once she is buried." SCI asserts that this apprehension concerns future anxiety for which damages were not awarded by the jury. But Mrs. Guerra's testimony was that she had worried and anguished in the past about what would happen to her and her husband when she is buried. To the extent the testimony supports mental anguish damages, it supports damages for anguish in the past and the jury's answers reflect that.

SCI urges that if the evidence is legally sufficient to support some damages, it is legally insufficient to support the entire amount of damages awarded to Mrs. Guerra by the jury. *See Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996) ("Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded."). We do not address the argument because even if we sustained it, the result would be a remand to the court of appeals to consider a remittitur. *See Bentley*, 94 S.W.3d at 607–08. As we explain below, our determination of other issues requires the case to be remanded for a new trial.

## IV. Evidentiary Issues

### A. Other Lawsuits, Verdicts, and Judgments

SCI challenges the trial court's admission of evidence about other lawsuits, verdicts, and judgments against it.[3] SCI as-

---

3. The SCI entities also challenge admission of evidence of other lawsuits and allegations of wrongdoing against SCI International. That evidence, involving cemeteries outside Texas, was similar to the type of evidence of other suits that was admitted against SCI Texas— but more inflammatory. It included allegations made in class-action pleadings, settlements, allegations of criminal wrongdoing, newspaper articles involving various allegations, reports of interviews with persons involved, and facts that for the most part were not similar to those involving the Guerras, and did not involve any of the Mont Meta employees who dealt with the Guerras, nor the decisions and actions taken to move Mr. Guerra's body. And at least some of the events described took place before SCI Flori-

serts that the evidence was irrelevant.[4]

### 1. Preservation of Error

The Guerras claim that SCI waived error because although SCI first raised objections to evidence of other suits, verdicts, and judgments by a motion in limine and objected when the evidence was introduced, SCI did not object when the Guerras' attorney referred to the matters during jury selection and opening statement. They cite *Texas Employers' Insurance Ass'n v. Schanen*, 263 S.W.2d 614, 615 (Tex.Civ.App.-San Antonio 1953, no writ), in support of their assertion that attorney's statements made during jury selection must be objected to on pain of waiving error to the introduction of evidence during trial.

But in *Schanen* the trial court overruled a motion for mistrial based on questions propounded to and statements made by a potential juror during voir dire, even though the party moving for mistrial did not object to the questions or answers at the time they occurred. The court of appeals analogized the situation to one in which evidence is received during trial without objection. *See id.* at 614–15. It held that in the absence of a timely objection, the trial court did not err in denying the motion for mistrial. *Id.*

 *Schanen* is inapposite. SCI is not seeking a mistrial or complaining about matters that occurred during the jury selection process and to which it did not object; it is complaining about the admission of evidence during trial, to which it timely objected. Error is preserved with regard to a ruling that admits evidence if the opponent of the evidence makes a timely, specific objection and obtains a ruling. TEX.R.APP. P. 33.1; TEX.R. EVID. 103; *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). The failure to object to an attorney's statements during voir dire of the jury panel, without more, does not waive a later objection to evidence offered during trial, because statements by lawyers during the jury selection process are not evidence. SCI timely objected when evidence of other lawsuits was introduced and the Guerras do not argue otherwise. SCI preserved error. *See McShane*, 239 S.W.3d at 235.

 The Guerras also assert that SCI waived error by referring to the other lawsuits in its own opening statement. This reference, the Guerras argue, "opened the door" to the evidence because if a party or the party's attorney references a matter first, thereby "opening the door" by effectively inviting a response, then the opposing party is entitled to make an appropriate response. *See Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 473 (Tex.1998) (noting that a party may not complain on appeal of the admission of improper evidence if the party "opened the door" by introducing evidence that is the same or similar in character). But here the Guerras' attorney, not

---

da, an SCI International subsidiary, owned one of the cemeteries involved in the other suits.

Our failure to address the admission of that evidence should not be taken as approval of its admission. We do not address it in depth because SCI International will not be part of the trial on remand and the evidence was not connected with SCI Texas except through SCI Texas's relationship to SCI International.

4. SCI also asserts that the admission of this evidence unconstitutionally impacted punitive damages. We do not address this constitutional issue because we only decide constitutional questions when we cannot resolve issues on other grounds. *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex.2003).

SCI's attorney, was the first to allude to other lawsuits in opening statements. The response of SCI's attorney was not inappropriate in manner or substance: he acknowledged that other suits had taken place, but maintained that the trial should be about the Guerra family's claims and the facts underlying those claims. SCI's attorney did not exceed the boundaries of the Guerras' attorney's statements or introduce new matters into the proceedings so that he invited a response. SCI did not open the door or waive error.

### 2. Relevance of the Evidence

■■■■ We review a trial court's decision to admit evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex.2005). Evidence of other wrongs or acts is not admissible to prove character in order to show "action in conformity therewith." TEX.R. EVID. 404. But it is admissible to show a party's intent, if material, provided the prior acts are "so connected with the transaction at issue that they may all be parts of a system, scheme or plan." *Oakwood Mobile Homes, Inc. v. Cabler*, 73 S.W.3d 363, 375 (Tex.App.-El Paso 2002, pet. denied); *see* TEX.R. EVID. 404. This can be shown through evidence of similar acts temporally relevant and of the same substantive basis. *See Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 268–69 (Tex.App.-El Paso 1994, writ denied), *overruled, in part, on other grounds by Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362 (Tex.2000). We agree with SCI that the Guerras failed to demonstrate sufficient connection between the events in this case and the alleged actions in other lawsuits to show the other suits were admissible.

■■■■ For most of the other suits referenced by the Guerras, only the plaintiffs' petitions were admitted and testimony encompassed generalizations as to the different suits. The Guerras assert such evidence was admissible because the other suits involved similar facts to those underlying their claim—double sale of a plot or moving a body without the family's permission.[5]

As for the suits involving allegations that plots that had already been purchased and were sold a second time to someone else, the Guerras presented no evidence that those events were so connected to the events here that they were all part of a system, scheme, or plan. For example, the Guerras provided the most details about a case involving Rudy Garza, who was buried at Highland Memorial Park in Weslaco in 1977. Another family—the Rogers—purchased four side-by-side plots at Highland Memorial in 1982. One of the plots was the plot where Garza was buried. When a member of the Rogers family died in 2002 and was to be buried, a Memorial Park employee discovered that Garza was buried in a plot that had been sold to the Rogers. The cemetery employees tried to conceal the mistake, then asked Garza's family for permission to move his body. The family denied permission and the body was not moved.

The resale of Garza's plot occurred in a different cemetery before it was owned by SCI Texas and nearly twenty years before the events in this case. There was no evidence that any of the same employees were involved in both the Garza case and the Guerras' case, that the events were

---

5. The Guerras also claim that other suits involving burial of a body in the wrong space were similar to the facts of this case. But this case did not involve burial of a body in the wrong space. Mr. Guerra was buried in the space his family selected and purchased for him. Therefore, evidence of those suits was not admissible to show part of a system, scheme, or plan.

**236**

somehow connected, or that circumstances surrounding the sales were similar.

The Guerras presented few details about the other cases they alleged involved sales of plots that already belonged to someone else. To the extent details were provided, they showed that the sales were at different cemeteries and each took place at least two years before the events underlying the Guerras' case. The area vice-president over Mont Meta at the time of Mr. Guerra's burial was in charge of some of the other cemeteries when plots were sold twice, but there was no evidence he had any involvement in the sales or that anyone involved in the Guerra events was involved in the other sales.

The Guerras claim that the other cases were relevant to show a pattern of indifference amounting to a common scheme and show that SCI took no action to avoid recurrences of misconduct. But without evidence of the actual facts and circumstances involved, the evidence does not show a sufficient connection to the events at issue to support their being relevant. *See Durbin,* 871 S.W.2d at 268–69 (finding that a trial court abused its discretion in a workers' compensation wrongful discharge case by excluding evidence of other retaliatory acts by a corporation involving the same supervisory personnel, the same workplace, and the same pattern of conduct).

In regard to suits with claims allegedly similar to the Guerras' claim for moving Mr. Guerra's body without permission, the trial court admitted evidence of one suit in which a body was moved without permission. The evidence in that case showed that when Estella Cooper's husband was buried in 2003 at Sunset Memorial Gardens in Odessa, a cemetery owned by SCI Texas, he was buried in the wrong plot. Cooper knew on the day of her husband's burial that he was not being buried in the

plot she had purchased, but she did not say anything. When she later went to visit the grave, his body had been moved to the plot she had purchased. Cooper testified that she sued "SCI" and a jury awarded her and her family $3.5 million.

Although both the Guerras' case and the Cooper case involved cemetery employees moving a body without permission, that is where the similarities end. The events occurred at different cemeteries and there was no evidence that any of the same employees were involved or that they occurred under similar circumstances. The events also occurred more than a year apart. There is no evidence that the events were part of a system, scheme, or plan.

We conclude that the trial court erred by admitting irrelevant evidence of other lawsuits, verdicts, and judgments. We next consider whether the errors were harmful.

### 3. Harm

■ An error in admitting evidence requires reversal if it probably caused the rendition of an improper judgment. TEX. R.APP. P. 61.1; *Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131, 144 (Tex.2004). In determining whether the error was harmful we evaluate the entire case from voir dire to closing argument, considering the evidence, strengths and weaknesses of the case, and the verdict. *Reliance Steel & Aluminum Co. v. Sevcik,* 267 S.W.3d 867, 871 (Tex.2008). We also consider whether counsel emphasized the erroneous evidence and whether the admission of the evidence was calculated or inadvertent. *Id.* at 874; *Nissan Motor Co.,* 145 S.W.3d at 144 ("[W]hether erroneous admission is harmful is more a matter of judgment than precise measurement.").

The Guerras' attorney colorfully and skillfully emphasized the evidence of suits, verdicts, and judgments against other cemeteries from voir dire through closing argument. For example, during voir dire he asked some venire members who had family buried in Buena Vista cemetery which was owned by "SCI," questions such as "have they ever from Buena Vista told you that they also had allegations and lawsuits filed against them in this county for selling plots when people were still— were already buried in them?" He commented in his opening statement about evidence that SCI illegally dug up bodies "not just in this case but you'll hear others" and "[w]e'll also be showing you again they have been involved in other lawsuits." During trial the Guerras' attorney questioned SCI representatives about the suits, sometimes reading allegations from the pleadings which had been admitted as evidence. And during closing argument, the Guerras' attorney continued to emphasize the other lawsuits, verdicts, and judgments. For example, he argued that "Odessa awarded $3.5 [million] to that lady who they did the same thing to in Midland." Manifestly, the Guerras' attorney intended the evidence to be a significant and pervasive part of the trial. *See Reliance Steel*, 267 S.W.3d at 874 ("[A] party's insistence on introducing inadmissible testimony 'indicates how important he thought it was to his case.'" (quoting *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 917 (Tex.1992))).

■ In this case there was no evidence three of the four plaintiffs suffered compensable mental anguish, yet the jury awarded each of the three mental anguish damages of $100,000. Because there was no evidence to support a finding of compensable mental anguish, the jury's find-

ings must have been based on something other than properly admitted evidence, and we have no doubt that the extensive evidence of other suits, allegations in the suits, and similar evidence was a significant factor in the jury's damages findings, both actual and punitive. *See id.* at 872. We conclude that the erroneous admission of evidence of other lawsuits, verdicts, and judgments was harmful and requires the case to be remanded for a new trial.

**B. Punitive Damages in a Trust**

Although we have concluded that the case should be remanded for a new trial, in order to provide guidance to the trial court on retrial we next address SCI's claim that the trial court improperly admitted evidence that Mrs. Guerra would put any punitive damages she received into a trust to pay for funerals for persons who could not afford them.[6] *See MCI Sales & Serv. v. Hinton*, 329 S.W.3d 475, 495 n. 19 (Tex. 2010). The questions and answers of which SCI complains are as follows:

Q. You're also asking the jury to award punitive damages for this criminal behavior of theirs, correct?

A. Of course.

Q. But you don't want a dime of that yourself do you?

A. No.

Q. In fact, you want that put in a trust to pay for people who are not able to afford their own funeral?

A. That's right.

Q. That's where any monies they award will go and you've got a trust set up to do that, correct?

A. Yes, sir.

SCI claims that this evidence is irrelevant.

■ Evidence is relevant, and therefore admissible, if it has any tendency to

---

**6.** SCI also asserts that the admission of this evidence violates due process. We do not

address the constitutional question. *See In re B.L.D.*, 113 S.W.3d at 349.

"make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401, 402. The purposes of punitive damages are to deter and punish culpable conduct. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 896 (Tex.2000); *see* TEX. CIV. PRAC. & REM.CODE § 41.001(5) (providing that exemplary damages, including punitive damages, are "damages awarded as a penalty or by way of punishment"). The Legislature has set out several factors to be considered when determining the amount of exemplary damages. These include the nature of the wrong, the character of the conduct involved, the wrongdoer's degree of culpability, and the situation and sensibilities of the parties. *Id.* § 41.011. Evidence about what Mrs. Guerra planned to do with any punitive damages was not relevant to proving any of these factors or to penalizing or punishing SCI. *See* TEX.R. EVID. 401; *see also Honeywell v. Sterling Furniture Co.,* 310 Or. 206, 797 P.2d 1019, 1021 (1990) ("[I]nstructing a jury that a portion of any punitive damage award will be used to pay the plaintiff's attorney or to contribute to a worthy cause, such as help for victims of crime, does nothing to further or even to inform the jury as to the proper goals of punitive damage awards. Instead, the instruction distracts the jury from the appropriate line of analysis that this Court has said a jury should follow in cases involving potential awards of punitive damages . . . .").

The Guerras argue that the evidence was relevant to their claim for injunctive relief in which they requested SCI be required to fund a program to study and monitor their cemeteries and implement procedures to ensure proper record keeping. But Mrs. Guerra's plans to set up a trust to pay for funerals for people who could not afford them were simply not relevant to the issue of whether she was entitled to an injunction regarding monitoring of SCI cemeteries.

The Guerras also assert that the evidence was relevant to rebut SCI's attorney's statement during voir dire that the case was about the amount of damages. We disagree. During voir dire SCI's attorney stated "[w]e are not fighting about the circumstances of what happened because we admit that it's wrong, but how much money." That was simply a statement focusing the jury's attention on the damages issues that would be submitted to them. The statement did not change the focus of the jury to what the Guerras would do with any money they received.

 The Guerras claim that SCI waived its complaint by offering similar evidence—evidence that SCI accommodates families who are needy—because a party may not complain on appeal of the improper admission of evidence if the complaining party introduced the same evidence or evidence of a similar character. *See Sw. Elec. Power Co.,* 966 S.W.2d 467 at 473. After Mrs. Guerra testified that she would put any punitive damages into a trust, SCI presented evidence that it has a program to help families who cannot afford funeral services. SCI's evidence was not exactly the same as Mrs. Guerra's testimony, but in context it seems to have been an attempt to blunt the effect of her testimony about how she planned to use any exemplary damages. Because the case will be remanded for a new trial for other reasons, we need not decide whether Mrs. Guerra's testimony was harmful or whether SCI waived its complaint. But for the trial court's benefit on retrial we note that Mrs. Guerra's testimony about what she planned to do with any punitive damages award was not relevant and was not admissible.

## V. Other Issues

SCI also claims that (1) the jury was improperly influenced by an improper "Golden Rule" argument in which it claims the Guerras' attorney asked the jury to put themselves in the Guerras' place and award what they would want to be awarded, and (2) because there was only one damages question based on three theories of liability, it cannot be determined whether the damages were supported by the one cause of action that SCI asserts was viable. These issues may not recur during the new trial on remand and we do not address them. *See Columbia Rio Grande Healthcare, L.P. v. Hawley,* 284 S.W.3d 851, 865 (Tex.2009).

## VI. Conclusion

We reverse the judgment of the court of appeals. We render judgment that (1) Julie, Gracie, and Mary Ester take nothing from SCI International and SCI Texas and (2) Mrs. Guerra take nothing from SCI International. Mrs. Guerra's claim against SCI Texas is remanded for a new trial.