Dissenting opinion
issued August 11, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-09-00492-CV

———————————

Thomas Farrar, Appellant

V.

Sabine
Management Corporation a/k/a Sabine Properties Management, Inc. and Northwest
Building, Ltd.,
Appellees



 



 

On Appeal from the 269th District
Court

Harris County, Texas



Trial Court Case No. 2006-14247

 



 

DISSENTING OPINION

          As a matter of law, the natural accumulation of ice
or mud does not create an unreasonable risk of harm.  See, e.g., Scott
& White Mem’l Hosp. v. Fair, 310 S.W.3d 411, 419 (Tex. 2010); M.O.
Dental Lab v. Rape, 139 S.W.3d 671, 676 (Tex. 2004) (per curiam); Johnson
County Sheriff’s Posse, Inc. v. Endsley, 926 S.W.2d 284, 287 (Tex. 1996); Brownsville
Navigation Dist. v. Izaguirre, 829 S.W.2d 159, 160–61 (Tex. 1992).  The
same rule applies to the naturally occurring condition at issue in this case, a
surface made wet by rain.  No evidence has been produced to show that the
wheelchair ramp where appellant Thomas Farrar fell was slippery for any reason
other than the natural occurrence of rain.  Accordingly, I would affirm the
judgment of the trial court because the evidence is insufficient to create a
genuine issue of material fact as to whether an unreasonably dangerous
condition existed on the premises.  Tex. R. Civ. P. 166a(i); Cnty. of Cameron v.
Brown, 80 S.W.3d 549, 556 (Tex. 2002); Seideneck v. Cal Bayreuther
Associates, 451 S.W.2d 752, 754–55 (Tex. 1970).

In support of his allegation that the slippery painted
surface of the wheelchair ramp constituted an unreasonably dangerous condition,
Farrar presented evidence that the surface of the ramp was painted three weeks
before he fell on it.  The surface of the ramp was not tested while wet, and
agents of Sabine and Northwest agreed that it should have been so tested.  Farrar
testified that shortly after his fall, the property manager of the premises told
him that a man checking fire alarms slipped on the ramp earlier on the same day. 
This evidence did not indicate that the ramp was wet or slippery at the time of
the prior slip,* why the man slipped, or that the man
fell or suffered any injury.  Farrar also presented evidence that he was
wearing special-issue postal shoes to help prevent slips and falls.  He alleges
that when he stepped on the painted surface of the ramp, his feet slipped out
from under him, resulting in his injury.

A condition poses an unreasonable risk of harm when there is
a “sufficient probability of a harmful event occurring that a reasonably
prudent person would have foreseen it or some similar event as likely to
happen.”  Brown, 80 S.W.3d at 556; Seideneck, 451 S.W.2d at 754. 
In this context, “foreseeability does not require that the exact sequence of
events that produced an injury be foreseeable.”  Brown, 80 S.W.3d at
556.  “Instead, only the general danger must be foreseeable.”  Id.

To defeat Sabine and Northwest’s no-evidence motion for
summary judgment, Farrar was required to produce evidence raising a fact issue
as to the existence of an unreasonably dangerous condition.  Tex. R. Civ. P. 166a(i).  “A no
evidence point will be sustained when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a mere scintilla,
or (d) the evidence conclusively establishes the opposite of the vital fact.”  Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert
W. Calvert, “No Evidence” and “Insufficient Evidence” Points of Error,
38 Tex. L. Rev. 361, 362–63
(1960)); see also Serv. Corp. Int’l v. Guerra, No. 09-0941, 54 Tex. Sup.
Ct. J. 1191, 2011 WL 2420208, at *3 (Tex. June 17, 2011) (quoting King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)).  To be more than
a scintilla, the evidence must rise “to a level that would enable reasonable
and fair-minded people to differ in their conclusions.”  Transp. Ins. Co. v.
Moriel, 879 S.W.2d 10, 25 (Tex. 1994); Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 601 (Tex. 2004).  However, “when the evidence offered to prove
a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence, such evidence is in legal effect no evidence, and
it will not support a verdict or judgment.”  Seideneck, 451 S.W.2d at 755
(citing Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898)); see also Guerra,
2011 WL 2420208, at *3.

As explained below, none of the evidence produced by Farrar
creates anything more than suspicion that the painted surface of the wheelchair
ramp was an unreasonably dangerous condition.

1.       Creation of condition.  Farrar identifies the fact that
Sabine and Northwest created the condition of a freshly painted surface on the
wheelchair ramp as an important consideration in determining whether there was
an unreasonably dangerous condition on the premises.  Certainly the fact that the
owner and occupier of the building were responsible for the painting of the
ramp is relevant to their actual or imputed knowledge of the condition.  But
the mere fact that Sabine and Northwest controlled the painting of the
wheelchair ramp is not probative as to the likelihood that a pedestrian might have
been injured when the wheelchair ramp inevitably became wet from rain.  See
Brown, 80 S.W.3d at 556.

Likewise, none of Farrar’s evidence about how the wheelchair
ramp was painted tends to show that a dangerous condition resulted.  Farrar
contends that Sabine and Northwest used “a paint that enhanced the normally
occurring slipperiness of rain water on a concrete surface,” but he produced no
evidence of this.  The evidence showed only that the “safety paint” used to paint the ramp was
purchased from a hardware store, and that employees at the hardware store
suggested that sand or gravel should be mixed with the paint to create traction
and prevent slipping.  The evidence showed that sand was mixed in the paint
before it was used to paint the ramp.  No evidence was presented of the amount
of sand used, or to show that it was an insufficient amount of sand to make the
paint safe for its intended use.  No evidence was presented to show the properties
of the paint used on the wheelchair ramp, either with or without the sand, to
demonstrate that the paint did or did not enhance “the normally occurring
slipperiness of rain water on a concrete surface.”  No evidence was presented
to show any standard for measuring the surface traction of a wheelchair ramp to
determine, based on the incline of the ramp, whether it is safe for pedestrian
traffic, nor was any evidence presented to show how the surface traction and
incline of the ramp in question compared to any such standard.  Cf. Brinson
Ford, Inc. v. Alger, 228 S.W.3d 161, 162 (Tex. 2007) (per curiam) (plaintiff’s
expert evaluated risk of harm arising from pedestrian ramp by reference to the
Texas Accessibility Standards, http://www.tdlr.state.tx.us/AB/tas/abtas.htm,
and the American Society for Testing and Materials’s Standard Practice for
Safe Walking Surfaces).  See generally Gary M. Bakken et al., Slips, Trips, Missteps and Their Consequences
13–32 (2d ed. 2007).  No evidence was shown of the coefficient of friction
between the painted wheelchair ramp surface and Farrar’s shoes.  See Bakken et al., supra, at 13–32. 
In short, the evidence of the mere fact that the wheelchair ramp was recently painted
was completely inadequate to demonstrate that an unreasonably dangerous
condition resulted from the work.  See, e.g., Seideneck, 451 S.W.2d at 755 (“[W]hen the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, such evidence is in legal effect
no evidence, and it will not support a verdict or judgment”).  

2.       Failure to test.  Farrar also relies on Sabine’s and
Northwest’s admitted failure to test the wheelchair ramp under wet conditions. 
The panel majority also relies on the fact that Sabine and Northwest did not
ask the hardware store to verify that the paint job had been done correctly.  If
there were a dangerous condition on the premises, evidence of a failure to test
a painted surface created by the owner and occupier of the property would be
relevant to the question of whether ordinary care had been exercised to reduce
or eliminate the risk of harm.  But the failure to test is not itself evidence
that the condition was dangerous.  See id.

3.       Prior incident.  Evidence of a similar injury or
complaint attributable to the same condition is probative on the question of
whether the condition posed an unreasonable risk of harm.  See id. at 754; Hall v. Sonic Drive-In of
Angleton, Inc., 177 S.W.3d 636, 646 (Tex. App.—Houston [1st Dist.] 2005,
pet. denied).  However, in this case, the only
evidence of a similar injury or complaint is Farrar’s own testimony that
Marshall told him that a
man checking the building’s fire alarm system had also slipped on the ramp earlier the same morning.  The panel majority’s misleading
reference to “at least one complaint that the wheelchair ramp was slippery”
erroneously suggests that the complaint attributed a slip to a wet or slippery
ramp when the evidence showed no such thing.

Apart from being potentially hearsay (the evidence does not
indicate whether Marshall was speaking based on her personal knowledge, or in
her capacity as an agent of Sabine, or whether she was simply repeating a
statement by the fire-alarm tester), the evidence was inadequate to demonstrate
a sufficiently similar injury or complaint.  The evidence did not indicate that
the earlier incident involved a fall, that the wheelchair ramp was wet at the
time, or that the other man attributed his slip to the surface being slippery
due to rain or some other reason.  See Seideneck, 451 S.W.2d at
754 (“evidence of other falls attributable to the same condition . . . would
be probative”); Hall, 177 S.W.3d at 646.  Farrar arrived at the premises
moments before his fall, so his testimony that it was raining that morning did
not show when it began raining at the location of the wheelchair ramp, or, more
importantly, that the rain began before the unknown time of the alarm man’s
prior slip.  The weak evidence of one prior slip under unknown conditions was therefore
inadequate to raise a genuine issue of material fact as to the existence of an
unreasonably dangerous condition.  See Seideneck, 451 S.W.2d at 755.

4.       Fact of plaintiff’s own fall.  Farrar relies upon the evidence of
his own fall, the manner in which he fell, and the fact that he wore shoes
designed to prevent falls as evidence that the wheelchair ramp was unreasonably
dangerous.  However, the mere fact that a person slips is not, by itself, proof
of an unreasonably dangerous premises condition.  “[T]he fact an accident
happens is no evidence that there was an unreasonable risk of such an
occurrence . . . .”  Thoreson v. Thompson, 431 S.W.2d 341, 344 (Tex.
1968); see also Dickson v. J. Weingarten, Inc., 498 S.W.2d 388, 389
(Tex. Civ. App.—Houston [14th Dist.] 1973, no writ); H.E.B. Food Stores,
Inc. v. Flores, 661 S.W.2d 297, 300 (Tex. App.—Corpus Christi 1983, writ
dism’d); Ogueri v. Texas S. Univ., No. 01-10-00228-CV, 2011 WL 1233568,
at *5 n.4 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.)
(citing Eubanks v. Pappas Restaurants, Inc., 212 S.W.3d 838, 840–41
(Tex. App.—Houston [1st Dist.] 2006, no pet.)) (“The mere fact that [plaintiff]
slipped does not, by itself, prove that the condition of the floor posed a
foreseeable, unreasonable risk of harm.”); Smylie v. First Interstate Bank, Tex.,
No. 14-99-00713-CV, 2000 WL 1707308, at *2 (Tex. App.—Houston [14th Dist.]
Nov. 16, 2000, no pet.).  Farrar likewise presented no evidence to demonstrate
that either the manner of his fall or the fact that he fell while wearing
postal shoes was indicative of an unreasonably slippery surface.  Accordingly,
none of this evidence raises a fact issue as to the dangerousness of the ramp’s
surface.

5.       Subsequent remedial measures.  Finally, Farrar also submitted, and he relies
upon, evidence of subsequent remedial measures undertaken with respect to the
wheelchair ramp after his injury.  This evidence is not admissible for the
purpose of demonstrating the liability of Sabine and Northwest, see Tex. R. Evid. 407(a), and
accordingly it should not be given any weight in our no-evidence review.  See, e.g., Havner,
953 S.W.2d at 711 (a “no evidence point will be sustained when . . . the court
is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact”); Guerra, 2011 WL 2420208, at *3.

*        *        *

In sum, the evidence presented by Farrar does not amount to
any more than a scintilla of evidence that the painted wheelchair ramp was
unreasonably slippery or otherwise constituted an unreasonably dangerous
condition.  Because Farrar failed to satisfy his burden to come forward with
summary judgment evidence raising a genuine issue of material fact as to this
element of his claim, no-evidence summary judgment was properly granted.  For
that reason, I respectfully dissent.

 

                                                                        Michael
Massengale

                                                                        Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Massengale, dissenting.









*         The entirety of the record evidence on this point is
as follows.  Farrar testified that Marshall told him “there was a man checking
the fire alarm and that he slipped on the ramp, but he didn’t fall.”  He also
testified that Marshall said “the man checking the fire alarm slipped on it,
but he didn’t fall.”  He testified that Marshall told him her understanding was
that the alarm man’s slip occurred “[t]hat morning.”  Farrar testified he did
not think there was anything else that Marshall said, and that she “may have
said more,” but he did not remember “everything she said.”