TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00530-CV






HealthTronics, Inc., Appellant


v.


Lisa Laser USA, Inc. and Lisa Laser Products, OHG, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. D-1-GN-08-004469, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





O P I N I O N


 HealthTronics, Inc. sued Lisa Laser USA, Inc. and Lisa Laser Products, OHG
(collectively, "Lisa Laser") for breach of contract and tortious interference with contract. After the
trial court issued an order dismissing the suit based on a mandatory forum-selection clause in
the parties' contract, it denied Lisa Laser's request for an award of attorneys' fees. On appeal, this
Court reversed the portion of the trial court's order denying attorneys' fees and remanded for
a determination of the amount of reasonable attorneys' fees incurred. Lisa Laser USA, Inc. v.
HealthTronics, Inc., No. 03-10-00464-CV, 2011 WL 1237639, at *5 (Tex. App.--Austin Mar. 31,
2011, no pet.) (mem. op.) ("Lisa Laser II"). Now, after the remand, HealthTronics appeals the trial
court's order awarding $150,768.00 in attorneys' fees and additional fees in case of appeal to Lisa
Laser. In one issue on appeal, HealthTronics contends that the trial court erred by: (1) admitting the
testimony of Lisa Laser's attorneys, which HealthTronics asserts was inconsistent and unreliable;
(2) concluding the fees sought by Lisa Laser were reasonable; and (3) awarding fees to Lisa Laser
that were not related to obtaining dismissal of the case in Texas. Because we hold that the attorney
affidavits were properly admitted and the attorneys' fees granted by the trial court are reasonable and
were incurred during the prosecution of the case in Texas, we will affirm the trial court's award.


BACKGROUND

 The factual and procedural background of this case is fully discussed in our prior
opinion in Lisa Laser II. See id. at *1-2. For our purposes in this appeal, we need only provide a
brief timeline of relevant procedural events to provide context for our decision in this case.

 HealthTronics sued Lisa Laser in Travis County District Court in December 2008
for breach of contract and tortious interference with contract. In January 2009, Lisa Laser moved
to dismiss the suit based on the contract's forum-selection clause, asserting that the exclusive
venue for disputes arising out of the contract was Alameda County, California. The trial court
denied Lisa Laser's motion to dismiss.

 Lisa Laser then filed a petition for writ of mandamus in this Court, seeking to compel
the trial court to vacate its order and dismiss the suit. This Court denied the petition in May 2009.
Lisa Laser next filed a petition for writ of mandamus in the Texas Supreme Court. During the
pendency of the mandamus proceeding in the supreme court, in August 2009, Lisa Laser filed an
amended answer in the underlying suit, asserting counterclaims against HealthTronics. In October
2009, the parties entered into an agreement that all discovery conducted while the lawsuit was in
Travis County could be used in any lawsuit arising from the same or similar facts and claims
between the parties in any California court. In December 2009, Lisa Laser sued HealthTronics in
Alameda County, California, asserting exactly the same claims that it had asserted as counterclaims
in HealthTronics's Texas suit. Also during this time, the parties conducted written discovery,
HealthTronics began noticing depositions, and it took in Texas the deposition of Lisa Laser's
president, who works in California. In April 2010, the Texas Supreme Court conditionally granted
Lisa Laser's petition for writ of mandamus, ruling that the forum-selection clause applied to the
parties' dispute. See In re Lisa Laser USA, Inc., 310 S.W.3d 880, 887 (Tex. 2010) (per curiam)
("Lisa Laser I").

 In May 2010, Lisa Laser filed a motion in the trial court requesting that the court
dismiss the case. Lisa Laser also requested an award of attorneys' fees incurred in connection with
its successful defense of the Texas suit, relying on a clause in the parties' contract that provides:


 The prevailing party in any legal action brought by one party against another party
and arising out of this Agreement shall be entitled, in addition to any other rights and
remedies it may have, to reimbursement for its expenses, including court costs and
reasonable attorneys' fees.


Lisa Laser sought an award of attorneys' fees and expenses in the amount of $117,596.10. It
attached to its motion affidavits from both its California attorney, Richard E. Korb, and its Texas
attorney, Derek L. Davis.

 The affidavits included extensive descriptions of each attorney's qualifications
and experience. Korb had been licensed in California for approximately 29 years at the time he
submitted the affidavit. He testified that his practice is primarily civil litigation with an emphasis
on business-related disputes and commercial litigation, and he has served as lead counsel in well over
150 civil cases and approximately six appeals. Davis had been licensed in Texas for approximately
15 years at the time he submitted his affidavit. Davis testified that he has been a trial lawyer
throughout his career, handling primarily personal injury and commercial litigation, and he has
served as lead counsel in at least 12 jury and bench trials, assisted with others, and has been
lead appellate counsel in over 10 appeals. Each attorney testified to his familiarity with the legal
billing practices and rates for attorneys practicing in their respective regions, i.e., the East Bay of
San Francisco, California for Korb; Austin, Texas for Davis. Davis also testified about his familiarity
with the Arthur Andersen factors that Texas courts consider when determining an amount of
"reasonable and necessary" attorneys' fees. See Arthur Andersen & Co. v. Perry Equip. Corp., 945
S.W.2d 812, 818 (Tex. 1997). (1)
 Davis offered his opinion about the applicability of each of the
Arthur Andersen factors relevant to this case. Korb also offered a detailed opinion about the work
that the case had required, and his testimony touched on most of the Arthur Andersen factors.

 Each attorney attached documentation to his affidavit showing his time entries on the
case. The documentation included a description of the work done (with very little redaction), the
amount of time spent, and the hourly rate, as well as itemized expenses. Korb also provided a
detailed description in his affidavit of the work done to defend against the case in Travis County and
explained some of the differences between Texas procedure and California procedure that resulted
in more expense in the Texas case than would have been required in California. Davis testified that
the time entries that he submitted related only to the work he had done defending Lisa Laser in the
Travis County case and enforcing the forum-selection clause through mandamus actions in this
Court and the Texas Supreme Court. Each attorney stated, based on his knowledge of the services
rendered to Lisa Laser, that their submitted fees ($67,294.05 for Korb; $42,687.50 for Davis) were
reasonable, as were the incurred expenses totaling $7,614.55.

 HealthTronics opposed the motion, asserting that Lisa Laser was not a "prevailing
party" under either California or Texas law for purposes of fee recovery. It did not object to Korb's
and Davis's affidavits or the attached documents. It did not submit any evidence opposing the
reasonableness of either attorney's hourly rates or time spent on the case.

 The trial court dismissed the suit, as mandated by the supreme court, but it denied
Lisa Laser's request for attorneys' fees. Lisa Laser appealed the trial court's ruling on attorneys'
fees to this Court. As mentioned above, we reversed the portion of the trial court's order denying
an award of attorneys' fees, finding that Lisa Laser was entitled as a prevailing party under California
law to an award of reasonable attorneys' fees. Lisa Laser II, 2011 WL 1237639, at *5. We remanded
the case to the trial court for a determination of the amount of the fee award. Id.

 On remand, Lisa Laser filed a supplemental motion for attorneys' fees, requesting
$31,672.00 in additional fees, bringing the total requested amount of fees and expenses to
$149,268.10. The additional fees were for discovery related to its counterclaims, pre-litigation
attorneys' fees, and fees related to the hearing on the original motion for attorneys' fees, the appeal
of that order, and preparation of the supplemental motion. Lisa Laser based its supplemental request
on a California court of appeals case that had been decided while its appeal in Lisa Laser II was
pending before this Court. See PNEC Corp. v. Meyer, 118 Cal. Rptr. 3d 730, 736 (Cal. Ct. App.
2010). Lisa Laser asserted that PNEC Corp. clarified that an appropriate fee award includes fees
for "work done while the case was under [the trial court's] jurisdiction." Id. Lisa Laser argued that
following PNEC Corp.'s holding and including all work done in Texas, including discovery, would
eliminate any uncertainty about a California court's ability to determine the reasonableness of
attorneys' fees incurred by attorneys following the discovery procedure of a foreign jurisdiction. In
addition, Lisa Laser argued that "[e]stablishing a bright line between the Texas and California
litigation" by including the fees incurred from pre-litigation to dismissal would prevent either state's
trial court from second-guessing the other's decision.

 HealthTronics opposed the supplemental motion, objecting to the affidavits submitted
by Korb and Davis in connection with both the first motion for fees and the supplemental motion
for fees. HealthTronics submitted two affidavits that Korb had offered in the California litigation
seeking attorneys' fees for various claims, asserting that the four Korb affidavits taken together
demonstrated that Korb's testimony was so self-contradicting and self-controverting as to be inherently
unreliable. HealthTronics argued that therefore Korb's affidavits should not be admitted as competent
evidence. HealthTronics asserted that "[f]or the same reasons, HealthTronics also objects to the
admissibility of the conclusory and unsupported statements in [Davis's affidavits] purporting to
support the reasonableness of the conflicting testimony and opinions advanced by Mr. Korb."
HealthTronics further argued that Lisa Laser had failed to carry its burden of proof on the
reasonableness of the requested attorneys' fees both because of its attorneys' inconsistent affidavit
testimony and because it sought fees unrelated to its pursuit of the motion to dismiss.

 At the hearing on the motion, Davis notified the court that Lisa Laser had incurred
another $1,500.00 in attorneys' fees related to his appearance at the hearing, resulting in a total fee
request of $150,768.00. The trial court awarded Lisa Laser the total amount requested, as well as
conditional appellate fees in the amount of $10,000.00 for an appeal to this Court; $5,000.00 for
a response to a petition for review in the supreme court; $5,000.00 for briefing on the merits if
requested by the supreme court; and $3,500.00 for preparing and attending oral argument in either
of the higher courts. This appeal followed.

 During the pendency of this appeal, the California court conducted a trial on
the merits of the California case. (2) A jury found that HealthTronics had breached its contract with
Lisa Laser, had knowingly made a false representation of an important fact, had intentionally failed
to disclose an important fact, and had intended to deceive Lisa Laser. The trial court entered
judgment on the jury's verdict that HealthTronics had caused damages to Lisa Laser in the amount
of $7,647,345.00 on the breach-of-contract claim and in the amount of $9,263,345.00 on the
intentional-misrepresentation claim. The California court further awarded Lisa Laser a total of
$1,745,740.00 in attorneys' fees related to the California case. The court specifically noted that
it was:


 not considering Mr. Korb's approximate[ly] 379 hours billed in the Texas litigation
for a number of reasons including this court's lack of first hand participation in the
Texas litigation (so as to be in the position of judging the reasonableness and worth
of the services) and the wish to avoid any appearance of inconsistent adjudications.


It also noted that it was taking into consideration "the litigation history here which has largely been
occasioned by the moves of [HealthTronics's] counsel as to choice of forum and procedural issues
put in play."


CHOICE OF LAW AND STANDARD OF REVIEW

 The parties' distribution agreement contains a choice-of-law provision stipulating
that California law governs the contract. Lisa Laser asserts, and HealthTronics does not dispute, that
this provision requires us to apply California law to the substantive issues related to Lisa Laser's
request for attorneys' fees. (3) See Lisa Laser II, 2011 WL 1237639, at *2 (noting parties' agreement
that California law applied to question of whether attorneys' fees were recoverable under parties'
contract). We will apply California law to the substantive question of whether the trial court awarded
reasonable attorneys' fees to Lisa Laser and Texas law to procedural questions. See In re Lisa Laser I,
310 S.W.3d at 882 n.2 ("The law of the forum state applies to procedural questions."). Procedural
questions include matters such as preservation of error, the admissibility of evidence, and standards
of review. See Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd., 249 S.W.3d 380, 387-90
(Tex. 2008) (applying Texas law to procedural matters including preservation of error and objections
to and sufficiency of expert testimony and Virginia law related to fraud claim); Illinois Tool Works,
Inc. v. Harris, 194 S.W.3d 529, 532 (Tex. App.--Houston [14th Dist.] 2006, no pet.) (applying
Texas law to determine standard of review and Illinois substantive law to contract's construction). 

 In this case, an award of reasonable attorneys' fees is mandatory under California law
because Lisa Laser is the prevailing party. Lisa Laser II, 2011 WL 1237639, at *5. The amount of
fees to be awarded is a matter within the trial court's discretion under California law. See PLCM
Group v. Drexler, 997 P.2d 511, 518 (Cal. 2000). In Texas, we review the trial court's decision
about the reasonableness of the award under an abuse-of-discretion standard. See Bocquet v.
Herring, 972 S.W.2d 19, 21 (Tex. 1998). The reasonableness of attorneys' fees is a fact question,
and we may not substitute our judgment for the factfinder's. Smith v. Patrick W.Y. Tam Trust,
296 S.W.3d 545, 547 (Tex. 2009). However, "[i]t is an abuse of discretion for a trial court to rule
arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting
evidence." Bocquet, 972 S.W.2d at 21 (citations omitted). HealthTronics alleges the evidence does
not support the fee award; thus, we must analyze whether there is sufficient evidence that the fees
are reasonable to determine whether the trial court abused its discretion. See id. We will discuss
below the Texas standards of review for challenges to the admission and sufficiency of the evidence.

DISCUSSION

 HealthTronics contends in its sole issue on appeal that the trial court erred by
awarding attorneys' fees to Lisa Laser. HealthTronics makes three arguments in support of this
issue. First, it challenges the trial court's admission of the attorney affidavits that Lisa Laser
offered in support of its fee request. Second, HealthTronics asserts that Lisa Laser failed to satisfy
its burden of proof that the fees were reasonable, and thus, the trial court should have rejected the
entire fee request. Third, HealthTronics argues that Lisa Laser, at most, was entitled to recover
fees specifically incurred to obtain dismissal of the suit in Texas, but none of the other fees
incurred while HealthTronics pursued its suit against Lisa Laser in Texas. Before turning to
HealthTronics's arguments, we will summarize California's substantive law related to reasonableness
of attorneys' fees.


Establishing reasonable attorneys' fees under California law

 The key substantive question in this appeal is whether the attorneys' fees awarded to
Lisa Laser are reasonable, and thus, we must apply California law to analyze the reasonableness of
the fees. Under California civil code section 1717, "[r]easonable attorney's fees shall be fixed by
the court." Cal. Civ. Code § 1717. To fulfill the legislative purpose of uniform treatment of fee
recoveries in contract cases, "the trial court has broad authority to determine the amount of a
reasonable fee." PLCM Group v. Drexler, 997 P.2d 511, 518 (Cal. 2000).

 Under California law, the fee-setting inquiry ordinarily begins with the lodestar
calculation. Id. The lodestar calculation is "the number of hours reasonably expended multiplied
by the reasonable hourly rate." Id. The California Supreme Court has expressly approved the use
of "prevailing hourly rates" as a basis for the lodestar. Ketchum v. Moses, 17 P.3d 735, 741 (Cal.
2001). The lodestar is the basic fee for comparable legal services in the community where counsel
is located that the court may then increase based on a number of factors (e.g., the novelty and
difficulty of the questions involved, the skill displayed in presenting them, the extent to which the
nature of the litigation precluded other employment by the attorneys, and the contingent nature of
the fee award). (4) Id. The purpose of any adjustment by the court is to fix a fee at the fair-market
value for the particular case. Id. The California Supreme Court considers "'the experienced trial
judge'" to be "'the best judge of the value of professional services rendered in his court, and while
his judgment is of course subject to review, it will not be disturbed unless the appellate court is
convinced that it is clearly wrong'--meaning that it abused its discretion." PLCM Group, 997 P.2d
at 518 (quoting Serrano v. Priest, 569 P.2d 1303, 1317 (Cal. 1977)). Moreover, "[t]he trial court
may make its own determination of the value of the services, contrary to, or without the necessity
for, expert testimony." Id. at 519.

 As previously noted, Texas procedure requires that even a mandatory fee award must
have evidentiary support. Bocquet, 972 S.W.2d at 21. It is an abuse of discretion for a trial court
to rule without supporting evidence. Id. This is consistent with California courts' examination of
fee awards--the only substantive difference is the type of evidence required to show reasonableness
under California law. For example, in PLCM Group, the California Supreme Court noted that the
trial court used the proper standard to calculate the fees (the number of hours expended by counsel
multiplied by the prevailing market rate for comparable legal services in the city where counsel was
located). But the court also explained that there was sufficient evidence to support the award, noting
that "in addition to the detailed documentation submitted by PLCM, the superior court was familiar
with the quality of the services performed and the amount of time devoted to the case." (5) Id. As a
result, the court concluded that "the award was not clearly wrong; the superior court did not abuse
its discretion." Id. In short, under California law, a party seeking attorneys' fees must provide
sufficient evidence to support the number of hours reasonably expended and the prevailing market
rate for comparable legal services in the community where counsel is located, but expert testimony
is not required.


Admissibility of the attorney affidavits

 We turn first to HealthTronics's argument that the trial court should not have
admitted the attorney affidavits. We apply an abuse-of-discretion standard to a trial court's decision
to admit or exclude evidence. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43
(Tex. 1998).

 HealthTronics challenged the reliability of Korb's affidavits, asserting that they
are inherently unreliable because they are self-contradicting and self-controverting. The trial court
overruled the objection at the hearing on the motion for fees. HealthTronics's challenge to Korb's
affidavits rests upon its premise that expert testimony is required to prove the reasonableness
of attorneys' fees. See Twin City Fire Ins. Co. v. Vega-Garcia, 223 S.W.3d 762, 770-71 (Tex.
App.--Dallas 2007, pet. denied) (discussing reliability challenge to expert testimony about attorneys'
fees); see also Woollett v. Matyastik, 23 S.W.3d 48, 52 (Tex. App.--Austin 2000, pet. denied)
("Expert testimony is required to support an award of attorney's fees."). In the usual Texas case, the
attorney affidavits would be subject to the two-part test that governs the admissibility of expert
testimony, i.e., (1) the expert must be qualified; and (2) the testimony must be relevant and based
on a reliable foundation. See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556
(Tex. 1995). As previously discussed, however, California law does not require expert testimony
to support the reasonableness of attorneys' fees.

 In general, courts consider the admissibility of evidence to be a procedural question
for purposes of choice-of-law analysis. See Arkoma Basin, 249 S.W.3d at 388-89 (applying Texas
law when analyzing whether objections to expert testimony were required at trial and whether expert
testimony was legally sufficient in case involving Virginia law); see also Restatement (Second) of
Conflict of Laws § 138 (1971) ("The local law of the forum determines the admissibility of evidence,
except as stated in §§ 139-141 [dealing with privileged communications, integrated contracts (parol
evidence rule), and statute of frauds]."). Although ordinarily a forum applies its own local law to
determine the burden of persuasion on a particular issue, when "the primary purpose of the relevant
rule of the state of the otherwise applicable law is to affect decision of the issue rather than to
regulate the conduct of the trial," we should apply the law of the state whose substantive law
otherwise applies. Restatement (Second) of Conflict of Laws § 133 (1971). In this case, California's
rule about the kind of proof required to prove attorneys' fees should apply because the primary
purpose of the rule is to affect decision of the issue; California law leaves determination of
reasonable attorneys' fees entirely in the trial court's hands. See Arkoma Basin, 249 S.W.3d at 383
(determining that Virginia law requiring clear and convincing evidence of fraud to establish liability
applied in legal-sufficiency review).

 Thus, under California law, Korb's affidavits need not satisfy the expert-testimony
admissibility requirements to provide evidence of reasonable attorneys' fees in this case. But even if
we were to apply Texas law on the admissibility of expert testimony, Korb's testimony here satisfies
the expert-testimony requirements. HealthTronics's only objection to the affidavits' admissibility
was its objection that Korb's testimony about the variation in his hourly rate over the course of the
case "demonstrate[s] an absence of reliability." To demonstrate reliability, there must be some
basis for the expert opinion offered. Robinson, 923 S.W.2d at 557. If the court concludes "there is
too great an analytical gap between the data and the opinion proffered," the expert's testimony is
unreliable. Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 728 (Tex. 1998). When we
review the reliability of expert testimony, we are not determining whether the expert's conclusions
are correct; we are examining the reliability of the analysis used to reach those conclusions. Id.

 In this case, Korb testified about the reasonableness of his hourly rate based on his
knowledge as an attorney of the legal market in which he worked and the type of rates charged for
this type of case. The testimony that HealthTronics challenges is not Korb's expert testimony about
the reasonableness of his rate, it is his testimony as a fact witness about what his rate was at different
time periods over the course of the case. See Twin City Fire Ins., 223 S.W.3d at 772 (holding that
attorney's testimony about how she arrived at her time estimates was factual, not expert, testimony).
Korb's lay testimony about his hourly rate was based on personal knowledge; his expert testimony
about the reasonableness of that rate was based on his "familiar[ity] with the legal billing practices
and rates for attorneys practicing in [his] region." See id. HealthTronics has not raised any challenge
to (1) Korb's qualifications to provide this opinion on reasonableness, or (2) the opinion's relevancy
or the reliability of Korb's methodology. See Robinson, 923 S.W.2d at 556. As a result, we hold
that the trial court did not abuse its discretion by admitting Korb's affidavits.

 HealthTronics also objected in the trial court and on appeal "to the admissibility of
the conclusory and unsupported statements in the Affidavits of Derek Davis purporting to support
the reasonableness of the conflicting testimony and opinions advanced by Mr. Korb." Although
HealthTronics failed to point out the specific objectionable statements in Davis's affidavits and did
not obtain a ruling on this objection at the hearing, see Texas Rule of Appellate Procedure 33.1,
Texas law allows a legal-sufficiency challenge to expert testimony that is speculative or conclusory
on its face, even in the absence of a valid objection to its admissibility. (6) See Coastal Transp. Co.
v. Crown Cent. Petrol. Corp., 136 S.W.3d 227, 233 (Tex. 2004). Davis testified that "from [my]
review of the affidavit of Richard Korb and from my personal knowledge of his work over the last
17 months, it is my opinion that his hours and fees are reasonable and were necessary for the proper
representation and defense of his long-time client, Lisa Laser." (Emphasis added.) To the extent
that HealthTronics asserts that this statement and any other statements in Davis's affidavits are
conclusory and unsupported opinions "purporting to support the reasonableness of the conflicting
testimony and opinions advanced by Mr. Korb," we disagree. Davis's opinions are not speculative
or conclusory; he "did not simply state a conclusion without any explanation." See Arkoma Basin,
249 S.W.3d at 389. He gave a detailed explanation of the work involved in the case based on his
personal knowledge. (7) Consequently, we hold that the trial court did not abuse its discretion in
admitting Davis's affidavits into evidence.


Sufficiency of the evidence supporting the fee award

 We next address HealthTronics's second argument--that Lisa Laser failed to carry
its burden of proof on reasonableness of the fees. This argument is intertwined with HealthTronics's
argument that the attorney affidavits were inadmissible. In essence, HealthTronics argues that the
trial court should have disregarded the affidavits, and therefore, Lisa Laser presented no evidence
or insufficient evidence to support the fee award. Because we found that the trial court properly
admitted the affidavits, we will analyze whether the affidavits provided sufficient evidence that
Korb's hourly rate and number of hours spent on the case were reasonable.

 When reviewing legal sufficiency of the evidence, we review the evidence in the light
most favorable to the challenged finding and indulge every reasonable inference that would support
it. City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). We must credit evidence favorable
to the trial court's decision if a reasonable factfinder could and disregard all contrary evidence that
a reasonable factfinder could ignore. Id. at 827. We will sustain a no-evidence complaint when the
record shows that (1) there is a complete absence of a vital fact, (2) the court is barred by law or the
rules of evidence from considering the only evidence offered to prove a vital fact, (3) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively
establishes the opposite of a vital fact. Service Corp. Int'l v. Guerra, 348 S.W.3d 221, 228 (Tex.
2011). More than a scintilla of evidence exists if it "rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions." Id. When a party attacks the factual sufficiency
of the evidence on an adverse finding on an issue upon which the other party had the burden of
proof, the attacking party must show that the evidence is insufficient to support the finding.
McMillin v. State Farm Lloyds, 180 S.W.3d 183, 201 (Tex. App.--Austin 2005, pet. denied). We
must consider and weigh all the evidence, and we should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986) (per curiam).

 We now turn to the question of whether Korb's and Davis's affidavits provided
sufficient evidence for the trial court's judgment that Korb's fees were reasonable. (8) Under
California law, Lisa Laser only needed to provide credible evidence of the reasonable hourly rate
and the number of hours reasonably expended, and it relied on Korb's affidavits and support from
Davis's affidavits to do so. As discussed above, Davis's opinion that Korb's fees and hours were
reasonable is legally sufficient even under Texas law about the sufficiency of expert testimony because
Davis provided an extensive explanation of the facts upon which his opinion was based, as well
as an explanation of his qualifications. As for the sufficiency of Korb's testimony, HealthTronics
contends that Korb is an interested witness and his testimony is so self-contradicting and inconsistent
that it does not even raise a fact issue. HealthTronics argues that an interested witness's testimony
can never do more than raise a fact issue, even when it is clear, direct, and positive, and free
from contradictions.

 HealthTronics misstates the law concerning an interested witness's testimony. The
testimony from an interested witness can be taken as true as a matter of law, if it is clear, direct
and positive, not contradicted by any other witness or attendant circumstances, and free from
contradiction, inaccuracies, and circumstances tending to raise suspicion. Ragsdale v. Progressive
Voters League, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam). This is especially true when the
opposing party had the means and opportunity of disproving the testimony, if it is not true, and failed
to do so. Id. But if the uncontradicted evidence is unreasonable, incredible, or questionable because
"there are circumstances in evidence tending to discredit or impeach the testimony of the interested
witness," the testimony only raises a question of fact to be decided by the factfinder. Id. In other
words, there is no circumstance in which the testimony is insufficient to raise a fact issue, as
HealthTronics argues. The trial court, as factfinder, is the sole judge of the credibility of the witnesses
and the weight to give their testimony. City of Keller, 168 S.W.3d at 819. As the reviewing court,
we may not impose our own opinion to the contrary. Id.

 In his affidavits, Korb testified that $325.00 per hour (the highest rate Korb charged
Lisa Laser for work on the Texas suit) was "well within the customary rates for an attorney
practicing in my region, particularly for an attorney with more than fifteen years of relevant
experience such as myself." He noted that many attorneys at his level in his region bill at an hourly
rate of more than $400.00 per hour. Korb had been practicing for approximately 29 years at the
time he submitted the affidavits. He testified that his practice is primarily civil litigation with an
emphasis on business-related disputes and commercial litigation, and he has served as lead counsel
in well over 150 civil cases and approximately six appeals. He explained in his May 21, 2010 affidavit
that his billing rate on the case had been $325.00 per hour through the end of March 2010, but that
when he began a solo practice, he further discounted his rate to $275.00 per hour because Lisa Laser
has to employ two sets of attorneys until the Texas case is resolved. The April 2010 invoice was the
only invoice submitted with the May 21, 2010 affidavit showing the $275.00 hourly rate.

 Korb testified that Lisa Laser had paid him for the services reflected in the documents
that he attached to show his time entries, which included the date, a description of the work done,
and the time spent. In addition, he stated that the entries included with his fee application constituted
only part of the fees that he billed because he excluded some fees that could arguably be recovered
by the prevailing party. As explained above, after our decision in Lisa Laser II, Lisa Laser filed a
supplemental motion for fees seeking payment for certain fees excluded in its first motion. It based
this supplemental request on a California Court of Appeals decision issued in November 2010,
which clarified that an appropriate fee award includes fees for "work done while the case was
under [the trial court's] jurisdiction." PNEC Corp., 118 Cal. Rptr. 3d at 736.

 In his May 4, 2011 affidavit filed in support of Lisa Laser's supplemental motion for
fees, Korb explained that he was still excluding various fees from his fee application that arguably
could have been included. He excluded most of his research and investigation, including research
of Texas law and trial and appellate procedure. He excluded all services rendered in connection
with Lisa Laser's filing of a separate suit in California. There were also hours of service he omitted
from his bill because he wanted to avoid or minimize duplication because he and Davis were both
working on the case. He testified that he omitted at least 90 hours of time over 2.7 years "in the
spirit of 'reasonableness.'"

 By the time of his May 4, 2011 affidavit, he had returned to billing Lisa Laser at his
original rate of $325.00 per hour. (9) He attached "true and correct cop[ies] of the hours and services
I rendered and billed the client for, related to the litigation filed by Health[T]ronics in Texas"
to both affidavits. Those documents reflect that he billed Lisa Laser for $86,441.55 ($67,294.05
submitted with the first motion for fees; $19,147.50 submitted with the second motion for fees). The
documents submitted with the first motion for fees show that Korb billed Lisa Laser for 191.4 hours
at $325.00 per hour (totaling $62,205.00) and 16.8 hours at $275.00 per hour (totaling $4,620.00). (10)
The documents submitted with the supplemental motion for fees show that Korb billed Lisa Laser
for 14.7 hours of pre-litigation fees at $325.00 per hour (totaling $4,896.00) and for 43.62 hours of
fees related to discovery, appeal, and research at $325.00 per hour (totaling $14,251.50), for a total
of $19,147.50.

 In response, HealthTronics offered no evidence to show that any of Korb's hourly
rates are not reasonable fees for comparable legal services in the community where Korb is located.
Instead, HealthTronics asserts that Korb's return to an hourly billing rate of $325.00 in his second
affidavit is inconsistent with his statement in his first affidavit that he had discounted his rate to
$275.00 while Lisa Laser was subject to suit in Texas as well as California. Although Korb does not
explain precisely when he returned to an hourly billing rate of $325.00, his return to a higher rate
after succeeding in obtaining a dismissal of the Texas case is not a "circumstance[] tending to cast
suspicion" upon his testimony. (11) Ragsdale, 801 S.W.2d at 882. At most, the change in Korb's hourly
rate creates a fact issue, which the trial court resolved in Lisa Laser's favor. See City of Keller,
168 S.W.3d at 819 (noting that factfinder is sole judge of witness's credibility and weight to give to
witness's testimony); see also McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986)
(explaining that factfinder "may resolve inconsistencies in the testimony of any witness").

 To prevail on a no-evidence challenge here, HealthTronics must point to evidence
that conclusively establishes the unreasonableness of Korb's hourly rate. See Service Corp. Int'l,
348 S.W.3d at 228. To prevail on a factual-sufficiency challenge, HealthTronics must show that
the overwhelming weight of the evidence demonstrates that Korb's hourly rate was clearly
unreasonable. See Cain, 709 S.W.2d at 176. HealthTronics's unsuccessful attempt to paint the
affidavits as too inconsistent to be reliable does not amount to any evidence, much less conclusive
evidence, disproving the reasonableness of any of the hourly rates charged by Korb in the Texas
suit.  We conclude that legally and factually sufficient evidence supports the reasonableness of the
hourly rates.

 Similarly, although HealthTronics attempts to use statements made by Korb in his
affidavit to show that the hours expended were unreasonable, it again offers no evidence to disprove
the reasonableness of the time spent--much less evidence that conclusively disproves this vital
fact.  HealthTronics does not identify any specific time entries that it contends were unreasonable.
Instead, it mischaracterizes statements that Korb made. For example, HealthTronics asserts that
Korb admitted that: (1) his involvement in the Texas litigation led to many duplicative efforts and
was not integral because of his longstanding relationship with the client; (2) the case was fairly
straightforward, but the fees were excessive because he did not trust local counsel's competency;
and (3) extensive discovery had been conducted in Texas that the parties had agreed could be used
in the California suit. In fact, Korb testified that:


 He is Lisa Laser's personal corporate counsel, and Lisa Laser only had to
hire a second law firm because HealthTronics chose to file this suit in Texas,
despite the mandatory forum-selection clause in the parties' contract. Neither
he nor Lisa Laser knew Davis before this suit, so Korb had to "closely
supervise everything he did for a long time until our client became more
comfortable with the situation." (Emphasis added.)


 


 Because Korb "had the relationship with, and trust of, the client, [he] had to
travel to Texas and defend [Lisa Laser's president] at his two-day deposition
in Texas," which HealthTronics had refused to either postpone or take in
California, where Lisa Laser's president works.


 


 Although the legal issues in the case were "fairly straight-forward," each
substantive issue had to be analyzed under both Texas and California law
because of the choice-of-law provision in the contract. He also "had to
familiarize [himself] with Texas law, discovery, pre-trial and appellate
procedure and practice since the client was specifically relying on my advice
as his personal corporate counsel and since neither one of us had a prior
relationship with Mr. Davis."


 


 "[T]here were many hours of service for which [Korb] did not bill the
client.  This was due in part to the fact that both Mr. Davis and [Korb] were
working on the file and [Korb] wanted to avoid or minimize duplication. As
a consequence, there were many tasks such as telephone conferences and co-drafting efforts where [Korb] did not bill [his] time or where [Korb]
significantly reduced [his] billable hours. [Korb] omitted at least 90 hours of
time over the past 2.7 years in the spirit of reasonableness."


 


 Korb included time to prepare for and defend against depositions noticed by
HealthTronics. He recognized that the parties stipulated that depositions and
discovery from the Texas case could be used in any action filed in California,
but at the time of the affidavits, it was unclear whether a California court
would honor the stipulation. In addition, the stipulation did not address the
issue of attorneys' fees. He stated that if the depositions were allowed by a
California court and the parties did not have to be re-deposed, he would omit
that time from any fee application in California.


 

 HealthTronics has neither pointed out any actual conflict in the evidence before the
trial court nor presented any evidence that conclusively rebuts the evidence and testimony offered
by Korb about the reasonableness of the hours expended. We conclude that legally and factually
sufficient evidence supports the reasonableness of the hours expended by Korb. Consequently,
we hold that the trial court did not abuse its discretion by awarding attorneys' fees supported by
evidence of a reasonable hourly rate and a reasonable amount of hours spent on the case.


Entitlement to all fees incurred in the Texas case

 In its third argument, HealthTronics complains that Lisa Laser did not adequately
segregate its fees incurred in connection with the motion to dismiss, which it asserts are the only
fees that this Court held were allowed in Lisa Laser II. We disagree with HealthTronics's reading
of our opinion in Lisa Laser II. In that case, we cited PNEC Corp. with approval, including the
California court's holding that even though the suit dismissed from California could be refiled in
the state of Washington, "the trial court did not err in awarding contractual attorneys' fees pursuant
to section 1717 'for the work done while the case was under its jurisdiction.'" Lisa Laser II, 2011
WL 1237639, at *4 (quoting PNEC Corp., 118 Cal. Rptr. 3d at 735-36). While we concluded that
Lisa Laser's "litigation objectives" were met in Texas when it obtained dismissal of the entire
proceeding for purposes of determining that Lisa Laser was a prevailing party, we did not suggest
that any award of attorneys' fees should be limited to fees incurred in connection with Lisa Laser's
motion to dismiss.

 Now that the issue is squarely before us, we reaffirm that Lisa Laser is entitled to its
reasonable attorneys' fees for work done in Texas related to the Texas suit. California courts have
held that "[p]revailing party attorney fees should be awarded based on the contract language, the
statutory language, and the fact of dismissal of the case, not on speculation [about the parties' future
conduct]." Profit Concepts Mgmt., Inc. v. Griffith, 76 Cal. Rptr. 3d 396, 400 (Cal. Ct. App. 2008);
accord PNEC Corp., 118 Cal. Rptr. 3d at 734. In PNEC Corp., the court held that the contract
language providing for an award of attorneys' fees and collection costs, if the account was referred
to an attorney for collection, was broad enough to entitle a defendant whose case was dismissed
on forum non conveniens grounds to an award of fees that was not limited to fees incurred for
work on the forum non conveniens issue. (12) 118 Cal. Rptr. 3d at 735-36. Similarly, in this case, the
contract language at issue is broad enough to entitle Lisa Laser to fees incurred for all work
performed by its attorneys on the case in Texas: "The prevailing party in any legal action brought
by one party against another party and arising out of this Agreement shall be entitled, in addition
to any other rights and remedies it may have, to reimbursement for its expenses, including court
costs and reasonable attorneys' fees." (Emphasis added.) Following the holding in PNEC Corp.,
Lisa Laser is entitled to recover reasonable attorneys' fees (and other expenses) for all work done
while the case was under the Texas courts' jurisdiction.

 HealthTronics has pointed us to no other California authority supporting the proposition
that Lisa Laser is entitled to recover only its fees incurred in connection with its motion to dismiss
based on the mandatory forum-selection clause. In California, a "prevailing party is entitled to fees
for any action 'on the contract,' whether incurred offensively or defensively." Turner v. Schultz,
96 Cal. Rptr. 3d 659, 663 (Cal. Ct. App. 2009). In this case, Lisa Laser filed counterclaims in the
Texas case and ultimately filed a suit in California asserting those claims while its mandamus on the
forum-selection clause was pending before the Texas Supreme Court. There is also evidence in the
record that HealthTronics chose to pursue written discovery and to begin noticing depositions in
Texas during the pendency of the forum-selection mandamus. If HealthTronics had not attempted to
circumvent the mandatory forum-selection clause by filing suit in Texas, Lisa Laser would not have
needed to pursue its counterclaims or defend against discovery in Texas. As a result, HealthTronics
"must accept the consequences of forcing defendants to fight on two fronts." Id. at 667.

 We conclude that California law required the trial court to award Lisa Laser attorneys'
fees for all work done related to the Texas case while that case is under the jurisdiction of Texas
courts, including pre-litigation work, since the Texas case was filed first. Drawing this jurisdictional
line makes sense. We note that although HealthTronics asserts on appeal that Lisa Laser sought to
recover fees related to its pursuit of its claims in the California lawsuit, it has pointed out no specific
time entries related to the California suit, and we discovered none in our review of the time entries
that Korb submitted. We conclude that there is legally and factually sufficient evidence that Korb
appropriately segregated his fees for the work done on the Texas case from his fees for the work
done on the California case. See Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313-14
(Tex. 2006) (holding that fee claimant must segregate recoverable from unrecoverable fees).

 We further note that the California trial court appears to have drawn the same
jurisdictional line upon conclusion of the trial there. The California court explained in its post-trial
orders that it had "reviewed Mr. Korb's declaration and determined by math and inference that he
expended 379 hours on the Texas litigation, which efforts have already been the subject of Texas
court review and award." Lisa Laser submitted a total of only 266.52 hours for Korb to the Texas
trial court, so there is no danger of double recovery. Consequently, as the prevailing party in the
Texas suit, Lisa Laser should recover all fees it incurred for work done on the Texas suit, including
fees related to (1) Lisa Laser's pre-suit negotiation with HealthTronics; (2) Lisa Laser's counterclaims
in the Texas suit; (3) discovery conducted in the Texas suit that the parties stipulated could be used
in the California suit, if allowed by the California court; and (4) settlement negotiations. The trial
court did not abuse its discretion when it awarded Lisa Laser attorneys' fees for work related to the
Texas suit that was performed before the dismissal of HealthTronics's suit against it in Texas and
for the appeals after the dismissal.

 For all the reasons stated above, the trial court did not err by awarding attorneys' fees
to Lisa Laser. We overrule HealthTronics's sole issue on appeal.


CONCLUSION

 Having overruled HealthTronics's sole issue, we affirm the trial court's judgment.


 __________________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: August 31, 2012

1. The Arthur Andersen factors include: "(1) the time and labor required, the novelty and
difficulty of the questions involved, and the skill required to perform the legal service properly;
(2) the likelihood . . . that the acceptance of the particular employment will preclude other
employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained; (5) the time limitations imposed by the client or
by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the
experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether
the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services
have been rendered. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997);
see also Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam)
(requiring consideration of factors including nature and complexity of case, nature of services
provided by counsel, time required for trial, amount of money involved, client's interest that is at
stake, responsibility imposed upon counsel, and skill and expertise required).

2. "An appellate court may take judicial notice of a relevant fact that is . . . 'capable of
accurate and ready determination by resort to sources whose accuracy cannot reasonably be
questioned.' . . . Under this standard, a court will take judicial notice of another court's records if
a party provides proof of the records." Freedom Commc'ns, Inc. v. Coronado, ___ S.W.3d ___,
No. 09-0745, 2012 WL 2361719, at *2 (Tex. 2012) (per curiam) (citing Tex. R. Evid. 201(b)) (other
citations omitted). Lisa Laser submitted the verdict form from the California trial, the California trial
court's final judgment, and its post-trial order on attorneys' fees. Texas Rule of Evidence 201(c)
provides that "[a] court may take judicial notice whether requested or not." This evidence is relevant
to our consideration of California law governing the attorneys' fees request in the Texas case.
Accordingly, we take judicial notice of the California trial court's records. 
3. Although HealthTronics does not dispute Lisa Laser's invocation of California law,
HealthTronics primarily relies on Texas law, not California law, to support its arguments. While
some of the substantive Texas law on the reasonableness of attorneys' fees is similar to California
law, as we will explain, there are important differences.
4. As noted earlier, Texas law requires the factfinder to consider a number of factors when
determining the reasonableness of a fee. Arthur Andersen, 945 S.W.2d at 818 (providing non-exclusive list of eight factors, including factors similar to California lodestar-multiplier factors).
The difference between Texas law and California law is that in California, the court's inquiry may
begin and end with the basic lodestar calculation of hours multiplied by rate. The trial court may,
or may not, increase or decrease the fees sought based on its consideration of the multiplier factors.
Texas courts, on the other hand, are required to consider these factors in every reasonableness
determination. See Arthur Andersen, 945 S.W.2d at 818. 
5. PLCM had been represented by in-house counsel employed by its parent company, and its
fee motion included a detailed reconstruction by in-house counsel of time records for all activities
performed. PLCM Group v. Drexler, 997 P.2d 511, 514 (Cal. 2000).
6. A general objection to evidence as a whole, which does not specify the objectionable
portion, is properly overruled if any part of that evidence is admissible. Speier v. Webster College,
616 S.W.2d 617, 619 (Tex. 1981) (holding trial court did not abuse discretion by admitting chart into
evidence that contained inadmissible portion because party did not specifically identify objectionable
portion); accord Austin v. Weems, 337 S.W.3d 415, 423 (Tex. App.--Houston [1st Dist.] 2011, no
pet.) (holding trial court properly overruled objection to police report that contained admissible
evidence because party did not specifically identify objectionable portions); General Motors Corp.
v. Harper, 61 S.W.3d 118, 126 (Tex. App.--Eastland 2001, pet. denied) (holding trial court properly
overruled objection to patents containing both hearsay and admissible evidence because party did
not specifically identify hearsay statements).
7. HealthTronics has never objected to Davis's testimony about his own rates and hours.
8. HealthTronics only challenges the evidence related to Korb's hourly rate and hours expended,
not Davis's.
9. On April 16, 2010, the Texas Supreme Court issued its opinion that the forum-selection
clause required the suit to be maintained in California.
10. When calculating the number of hours that Korb billed, we note that there is a slight
discrepancy in the total dollar amount requested in the affidavit from the total dollar amount that is
derived by adding up the subtotaled hours for each month and multiplying by the hourly rate.
Adding $62,205.00 to $4,620.00 equals $66,825.00, which is $469.05 less than the $67,294.05
requested in the affidavit. This de minimis discrepancy of approximately 1.4 hours at the $325.00
rate is not enough to render Korb's testimony incompetent. As the factfinder, the trial court may
resolve inconsistencies in a witness's testimony. See McGalliard v. Kuhlmann, 722 S.W.2d 694,
697 (Tex. 1986).
11. Although the statements attached to his supplemental affidavit show that he billed Lisa
Laser at a rate of $325.00 per hour for work done in April 2010, instead of $275.00 (as shown on his
documentation for April 2010 work that was attached to the first motion for fees), the supplemental
statement adds only 1.9 hours to his April 2010 work, resulting in a charge of an additional $95.00.
However, there appears to be a mathematical error in Korb's calculation of hours. His total of 43.62
hours should actually be 44.92 hours, a difference of 1.3 hours. If the statement is recalculated to
reflect the correct number of hours (44.92 - 1.9 = 43.02 x $325.00 = $13,981.50) and the correct
billing rate of $275.00 for April 2010 (1.9 x $275.00 = $522.50), the correct total for Korb's research
and discovery hours would be $14,504.00, instead of the $14,176.50 shown on the statement. In
other words, Korb actually requested $327.50 less than his statement reflects that he worked, even
accounting for a lower billing rate in April 2010. This de minimis discrepancy is again the sort of
inconsistency that the trial court, as factfinder, resolves. See McGalliard, 722 S.W.2d at 697.
12. The contract at issue in PNEC Corp. provided that: "The Customer and the undersigned
agree that if the account is referred for collection to an attorney, the undersigned will pay reasonable
attorney's fees and costs of collection." PNEC Corp. v. Meyer, 118 Cal. Rptr. 3d 730, 732 (Cal.
Ct. App. 2010).