# Supreme Court of Texas

No. 21-0017

Sarah Gregory and New Prime, Inc.,
*Petitioners,*

v.

Jaswinder Chohan, et al.,
*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE DEVINE, concurring, joined by Justice Boyd.

The value of a life is inherently unquantifiable. Grief, loss, loneliness, longing, pain, and suffering simply have no market value. The injury—the *anguish*—caused by the untimely loss of a loved one defies calculation, quantification, and measurement, but it is no less real, no less enduring, and—under Texas law—no less compensable. As the plurality opinion concedes, the evidence here validates the existence of such an injury. So, the ultimate question is: who decides the value of a man's worth to his family?

We have long entrusted such abstract concepts to the community through its duly empaneled jury representatives. And we have upheld

the jury's determination with just as much respect when the outcome was a zero damages award as when it was a much more significant one. But even as we must acknowledge that damage awards may occasionally exceed the bounds of our reasonable expectations, we ought to have faith in the jury system. As part of that system, judges—at every step of the way—have an opportunity to grade the jury's papers and offer a remedy for excessive awards.[1] But an intrinsic quandary exists: What constitutes "meaningful review" when there is no objectively correct answer? How can anyone measure the unmeasurable?

Today's plurality opinion explores the dilemma courts and juries face when asked to award monetary compensation for injuries that have no market value. Much of the guidance the plurality offers is helpful. But the opinion ventures far afield from what is necessary to decide this case and, more problematically, advocates a new evidentiary standard that is not only foreign to our jurisprudence but also incapable of being satisfied.[2] Though I concur in the judgment remanding for a new trial, I do not join the opinion.

---

[1] *Bentley v. Bunton*, 94 S.W.3d 561, 606-07 (Tex. 2002) (holding that "[t]he record leaves no doubt that Bentley suffered mental anguish" but that "is no evidence that Bentley suffered mental anguish damages in the amount of $7 million," which is "far beyond any figure the evidence can support").

[2] The plurality opinion also employs language hinting that, rather than requiring the *appealing party* to demonstrate the *absence* of a rational basis for the jury's damages award, the *prevailing party* would (or should) bear the burden on appeal to justify the jury's award. If the plurality were indeed shifting the appellate burden to the prevailing party, that would be an unprecedented change in the law. *See, e.g., ante* at 26-27 ("*to survive a legal-sufficiency challenge* to an award of noneconomic damages, a wrongful death *plaintiff should bear the burden of demonstrating* both (1) the existence of compensable mental anguish or loss of companionship and (2) a rational

As the plurality says, the rules governing damages for noneconomic injuries like mental anguish and pain and suffering apply in wrongful-death cases just as in personal-injury cases.[3] That being so, claimants bear the burden of establishing both the existence and amount of such damages, just as they do for economic damages.[4] To meet that burden, they must produce evidence sufficient to support the amount awarded.[5] That means they cannot engage in "unsubstantiated anchoring" by asking fact-finders to rely on evidence that has nothing to do with the pain or anguish they've suffered.[6] Nor can they ask or encourage the fact-finder to simply "pick a number" unrelated to the nature, duration, and severity of the noneconomic injury or anguish.[7] Rather, the amount the fact-finder awards must, but must only, reasonably and fairly compensate claimants for their injuries.[8] That

---

connection, grounded in the evidence, between the injuries suffered and the amount awarded." (emphases added)); *id.* at 27-29, 31 (asserting that even with "thorough," "sad[]," and "lengthy" evidence of the nature, duration, and severity of mental anguish, no evidence will support a jury's noneconomic damages award if the *prevailing party fails to proffer* a sufficient appellate argument explaining the award's size as opposed to holding the losing party to the burden of explaining how such testimony is so *legally inadequate* as to amount to *no evidence* of the amount awarded); *id.* at 29 ("Crucially, plaintiffs' counsel at no point in these proceedings has attempted to proffer a rational argument justifying . . . the amount awarded.").

[3] *Id.* at 3.

[4] *Id.* at 3, 16.

[5] *Id.* at 3-4, 16, 26.

[6] *Id.* at 17-18.

[7] *Id.* at 3, 11, 24.

[8] *Id.* at 12.

amount cannot be based on mere passion, prejudice, or improper motive.[9] And to uphold these requirements, both trial courts and appellate courts must engage in a meaningful review, just as they do for economic damages.[10]

But while the plurality makes an earnest effort to supply guidance and guardrails, the opinion overreaches and yet still comes up short. In the quest to eliminate the uncertainty of elastic standards that have long balanced jury discretion with judicial oversight, the plurality offers an impossible one. The newly articulated standard the plurality champions requires claimants to establish a "rational connection between the amount awarded and the evidence of injury."[11] Applying that standard here to the surviving spouse's "thorough, saddening, and . . . lengthy" testimony about the nature, duration, and severity of her family's suffering and loss, the plurality finds "no evidence" to meet it.[12] But what the plurality conspicuously refuses to say is what evidence would *ever* suffice.[13] The best the plurality can offer the bench, the bar, and these litigants is: we'll know it if we see it.

But we will never see it. As the plurality itself acknowledges, "money cannot genuinely compensate for emotional trauma" because

---

[9] *Id.* at 30 n.16.

[10] *Id.* at 13, 24.

[11] *Id.* at 3-4, 23, 26 (asserting that this novel mandate flows "ineluctably" from our precedent).

[12] *Id.* at 27-31.

[13] *Id.* at 22-27.

such "noneconomic harm transcends quantification entirely."[14]  Pain and anguish are not "*difficult* to monetize" due to the "'impossibility of any *exact* evaluation'";[15] they are *easy* to monetize but *impossible* to objectively quantify.[16]  By ignoring this basic truth, the plurality sets up a Sisyphean pursuit that would burden litigants and the legal system with costly do-over trials.[17]

The plurality agrees that juries should consider the "nature, duration, and severity" of the claimant's pain and anguish,[18] as do I.  But

---

[14] *Id.* at 14.

[15] *Id.* at 3, 12 (emphases added) (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2003)).

[16] *See Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 153 (Tex. 2014) ("[C]ompensatory damages offer a pecuniary remedy for [a] non-pecuniary harm that a plaintiff has suffered . . . . [N]on-pecuniary damages do not require certainty of actual monetized loss. Instead, they are measured by an amount that 'a reasonable person could possibly estimate as fair compensation.'" (footnote omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 905 cmt. i.)); *see also Compensate*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 463 (2002) ("to be equivalent to (as in value or effect)" "[to] make up for: counterbalance" "to make amends"); *Compensate*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, at 376 (5th ed. 2016) ("[t]o make . . . reparation to"); *Compensate*, BLACK'S LAW DICTIONARY, at 353 (11th ed. 2019) ("To make an amendatory payment to; recompense (for an injury)[.]").

[17] When there is some evidence of some amount of damages, we cannot render and must continue remanding.  *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 882 (Tex. 2010); *see also ante* at 32.  This is not a workable system.  *Cf. PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 274 (Tex. 2012) ("While no system is infallible, endless litigation, in which nothing was ever finally determined, would be worse than the occasional miscarriage of justice.").

[18] *See ante* at 10, 16 (quoting *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011), and *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).

even those factors cannot establish that a particular claimant's pain and anguish is "worth" any particular amount of compensation. A claimant who—based on nature, duration, and severity—sustains one hundred hypothetical "units" of pain or anguish should recover ten times as much as one who sustains only ten units, but that consideration points to no particular amount unless we know what one unit of pain and anguish is worth. The reality is that, although pain and anguish are compensable as a matter of law, no one can ever know what one unit is "worth" in the monetary sense, because pain and anguish is wholly nonpecuniary and has no market value.

The plurality implies that a claimant's financial costs of treating or dealing with pain and anguish could conceivably provide some basis for deciding an appropriate amount of compensation,[19] but those costs represent economic losses. And although the amount of economic losses could theoretically provide some "substantiated" anchoring,[20] it certainly will not do so in all cases. Beyond that, the plurality simply refuses to "speculate" about the permissible forms of evidence or argument that could support a particular amount in a given case.[21] At the same time, they would require claimants and their counsel to find that evidentiary needle in the haystack. *But there is no needle there.* By definition, nonpecuniary losses inherently have no pecuniary measure.

For that reason, fairly and justly compensating tort victims for noneconomic injuries boils down to a policy choice. This Court has long

---

[19] *Id.* at 23.

[20] *See id.* at 22-23.

[21] *Id.* at 24.

6

recognized that Texas law should allow monetary compensation for those who suffer emotional trauma due to the wrongful conduct of another. And like the highest courts of our sister states,[22] we have long

[22] *See, e.g.*, *Roof Serv. of Bridgeport, Inc. v. Trent*, 854 S.E.2d 302, 323 (W. Va. 2020) (holding that testimony regarding the victim's previous health and lifestyle, the significant injuries suffered, and the nature of lifestyle changes and impact on the victim's wife "compel our conclusion that the verdict awards are not monstrous, enormous, unreasonable, outrageous, and do not demonstrate jury passion, partiality, prejudice, or corruption"); *Castro v. Melchor*, 414 P.3d 53, 69 (Haw. 2018) ("A jury may draw upon its own life experiences in attempting to put a monetary figure on the pleasure of living. It is a uniquely human endeavor . . . requiring the trier of fact to draw upon the virtually unlimited factors unique to us as human beings. Testimony of an economist would not aid the jury in making such measurements because an economist is no more expert at valuing the pleasure of life than the average juror." (quoting *Montalvo v. Lapez*, 884 P.2d 345, 366 (Haw. 1994))); *Campbell v. Kennedy*, 275 So. 3d 507, 516 (Ala. 2018) ("The law is also clear that compensatory damages for pain and suffering cannot be measured by any yardstick, and the amount awarded must be 'left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise of that discretion.'" (quoting *Ala. Power Co. v. Mosley*, 318 So. 2d 260, 266 (Ala. 1975))); *Cohan v. Med. Imaging Consultants, P.C.*, 900 N.W.2d 732, 744 (Neb. 2017) ("Although no specific dollar amounts were attached to her emotional injuries, the amount of damages for pain, suffering, and emotional distress inherently eludes exact valuation."); *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 425 (Tenn. 2013) ("A jury has wide latitude in assessing non-economic damages. We trust jurors to use their personal experiences and sensibilities to value the intangible harms such as pain, suffering, and the inability to engage in normal activities."); *Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 120-21 (Ky. 2012) ("'If the verdict bears any relationship to the evidence of loss suffered, it is the duty of the trial court and this Court not to disturb the jury's assessment of damages.' . . . 'On such an issue as this, where the extent of pain being suffered is not capable of objective valuation, there really is no satisfactory standard by which to measure an award of damages.'" (quoting *Childers Oil Co. v. Adkins*, 256 S.W.3d 19, 28 (Ky. 2008), and *McClain v. Star Cab Co.*, 346 S.W.2d 539, 540 (Ky. 1961))); *Johnson v. Scaccetti*, 927 A.2d 1269, 1283 (N.J. 2007) ("Our model jury instructions on pain and suffering recognize the inherently subjective nature of the damage-calculating process. Those instructions inform jurors that: 'The law

does not provide you with any table, schedule or formula by which a person's pain and suffering disability, loss of enjoyment of life may be measured in terms of money. The amount is left to your sound discretion.'"), *abrogated on other grounds by Cuevas v. Wentworth Grp.*, 144 A.3d 890, 904-05 (N.J. 2016); *Est. of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 347 (Iowa 2005) (noting that "[d]amages for physical and mental pain and suffering cannot be measured by any exact or mathematical standard and must be left to the sound judgment of the jury" and affirming award as not "excessively flagrant" based only on evidence that "these causes of death would be terribly painful"); *Beaver v. Mont. Dep't of Nat. Res. & Conservation*, 78 P.3d 857, 875 (Mont. 2003) (noting the lack of "a definite standard by which to calculate compensation for mental pain and suffering"); *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. 1993) (stating that a jury has "virtually unfettered" discretion to award damages as long as they are within the "large range between the damage extremes of inadequacy and excessiveness" (quoting *Kenton v. Hyatt Hotels Corp.*, 693 S.W.2d 83, 98 (Mo. 1985))); *Vajda v. Tusla*, 572 A.2d 998, 1003 (Conn. 1990) ("Not only are damages for pain and suffering peculiarly for the trier of fact, but '[p]roper compensation [for pain and suffering] cannot be computed by a mathematical formula . . . there is no iron-clad rule for the assessment of damages.'" (quoting *Manning v. Michael*, 452 A.2d 1157, 1162 (Conn. 1982))); *McElroy v. Benefield*, 771 S.W.2d 274, 277 (Ark. 1989) ("There is no definite and satisfactory rule to measure compensation for pain and suffering and the amount of damages must depend on the circumstances of each particular case. Compensation for pain and suffering must be left to the sound discretion of a trial jury and the conclusion reached by it should not be disturbed unless the award is clearly excessive." (internal citation omitted)); *Sheraden v. Black*, 752 P.2d 791, 796 (N.M. 1988) ("There is no standard fixed by law for measuring the value of pain and suffering; rather, the amount to be awarded is left to the fact finder's judgment."); *Holmes Cnty. Bank & Tr. Co. v. Staple Cotton Coop. Ass'n*, 495 So. 2d 447, 451 (Miss. 1986) ("[T]here are also some damages, such as pain and suffering, that are not susceptible of proof as to monetary value[.]"); *Stackiewicz v. Nissan Motor Corp.*, 686 P.2d 925, 932 (Nev. 1984) ("We have long held that '[i]n actions for damages in which the law provides no legal rule of measurement it is the special province of the jury to determine the amount that ought to be allowed,' so that a court 'is not justified in reversing the case or granting a new trial on the ground that the verdict is excessive, unless it is so flagrantly improper as to indicate passion, prejudice or corruption in the jury.' . . . '[T]he elements of pain and suffering are wholly subjective. It can hardly be denied that, because of their very nature, a determination of their monetary compensation falls peculiarly within the province of the jury. . . . We

entrusted that question to juries, counting on our community representatives to apply common sense, community values, and their own life experiences in finding the appropriate amount to compensate their fellow human beings who are suffering.[23]  Of course, the jury's decision must be based on evidence of the nature, duration, and severity of the claimant's suffering—and it cannot be based on noncompensatory motivations.  But the reality is it can *never* actually be based on evidence establishing that the injury was "worth" a particular monetary amount.

---

may not invade the province of the fact-finder by arbitrarily substituting a monetary judgment in a specific sum felt to be more suitable.'" (quoting *Forrester v. S. Pac. Co.*, 134 P. 753, 768 (Nev. 1913), and *Brownfield v. Woolworth Co.*, 248 P.2d 1078, 1079-81 (Nev. 1952))).

[23] *See, e.g.*, *Anderson v. Durant*, 550 S.W.3d 605, 618 (Tex. 2018) (holding that because noneconomic damages "are not amenable to calculation with 'precise mathematical precision,'" the jury "has latitude in determining the award" so long as the jury awards "'an amount that a reasonable person could possibly estimate as fair compensation'" (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 887 (Tex. 2017), and *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 153 (Tex. 2014))); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003) ("[W]hether to award damages and how much is uniquely within the factfinder's discretion."); *Lucas v. United States*, 757 S.W.2d 687, 720 n.21 (Tex. 1988) (Phillips, C.J., dissenting) ("As to non-economic damages, on the other hand, there is no formula or even definition which has proved useful in their assessment. The appropriate amount is instead left to the discretion, experience and common sense of the finder of fact."); *Gulf, C. & S.F. Ry. Co. v. Johnson*, 44 S.W. 1067, 1067-68 (Tex. 1898) (stating that in cases where the jury is "authorized to take into consideration such mental and physical pain and suffering, and the nature, extent, and probable duration of the injury" when assessing damages, the law "in a large measure commits to the common sense and sound discretion of the jury the amount to be assessed").

In abiding by the Texas Constitution[24] and the law antecedent to it,[25] our compensatory-damages regime has long allowed community standards to inform how much money, if any, a wrongdoer must pay to compensate Texans for their noneconomic injuries.[26] Under that standard, judges play an important role in determining whether a particular award was "manifestly unjust," "shock[s] the conscience," or "clearly demonstrate[s] bias."[27] Keeping in mind this careful balance

---

[24] TEX. CONST. art. V, §§ 6(a) ("[The] Court of Appeals shall have appellate jurisdiction . . . [and] the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error."), 10 ("In the trial of all causes in the district courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury[.]"); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("[A]ppellate courts . . . must maintain the respective constitutional roles of juries and appellate courts[.]"); *see also* U.S. CONST. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.").

[25] *See, e.g.*, *Fulton v. Craddock*, Dallam 458, 458 (Tex. 1842) ("Upon an inspection of the record and looking into the testimony, we find the proof, although contradictory, to be somewhat stronger in support of Craddock's right to recover; under such circumstances the court will presume (especially after several verdicts) that the jury, who are the proper triers of the facts, have found correctly; we cannot therefore disturb the verdict. This is required by the genius and spirit of our laws; if it were otherwise, courts might render juries useless, and usurp the power of ascertaining facts which according to the principles of the constitution belong to juries in a court of law.").

[26] *See In re Rudolph*, ___ S.W.3d ___, ___ (Tex. 2023). [21-0135, slip op. at 22-24].

[27] *Golden Eagle Archery*, 116 S.W.3d at 773; *see Sanchez v. Schindler*, 651 S.W.2d 249, 253 (Tex. 1983) (observing that "fear of excessive verdicts is not a sufficient justification" for denying noneconomic damages because "[t]he judicial system has adequate safeguards to prevent recovery of damages based on sympathy or prejudice rather than fair and just compensation for the plaintiff's injuries"); *see also* TEX. CONST. art. V, § 6(a) (courts of appeals review

between judge and jury, the plurality's opinion is fundamentally at odds with the Court's admonishment today that "disregarding a jury's verdict is an unusually serious act that imperils a constitutional value of immense importance—the authority of a jury."[28]  To that end, I would not, as the plurality does, offer a solution that effectively neutralizes the jury's role by requiring them to rely on evidence a claimant simply cannot present.[29]

---

for factual sufficiency); TEX. R. CIV. P. 315 (remittitur), 320 ("New trials may be granted when the damages are manifestly too small or too large."); TEX. R. APP. P. 46.1–.5 (remittitur); TEX. R. EVID. 401 (relevance), 403 (excluding relevant evidence for prejudice, confusion, or other reasons); *In re Columbia Med. Ctr.*, 290 S.W.3d 204, 210 (Tex. 2009) (observing that trial courts can order remittitur and grant new trials and intermediate appellate courts can review the record for factual sufficiency); COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS & WORKERS' COMPENSATION PJC 1.3 (2020) (including instructions to jurors to "not let bias, prejudice, or sympathy play any part in [their] decision" and to "[b]ase [their] answers only on the evidence admitted in court and on the law that is in these instructions and questions").

[28] *Rudolph*, ___ S.W.3d at ____. [21-0135, slip op. at 13].

[29] "Preservation of the justice system enshrined in our constitutions, with public participation through the jury system, is worth every effort the legal system can muster."  Justice Nathan L. Hecht, *Jury Trials Trending Down in Texas Civil Cases*, 69 TEX. B.J. 854, 856 (2006).  While the system will not always get it right, in my experience it's better to adopt standards that will enable courts to strive for justice for all instead of imposing standards that will ensure injustice to many.  *See Univ. of Ariz. Health Scis. Ctr. v. Super. Ct.*, 667 P.2d 1294, 1298 (Ariz. 1983) ("[T]he hue and cry in many tort cases . . . is no more than the fear that some cases will be decided badly.  Undoubtedly, the system will not decide each case correctly in this field, just as it does not in any field, but here, as in other areas of tort law, we think it better to adopt a rule which will enable courts to strive for justice in all cases rather than rely upon one which will ensure injustice in many.").

11

Of course, nothing would prevent the Legislature from constructing a policy-based approach to noneconomic losses.[30] But because any approach must equate monetary amounts with injuries that have no market value, and each case is unique, that approach would suffer from the same challenges a jury faces when endeavoring, in good faith, to provide a truly fair and reasonable compensatory amount.[31]

One thing is clear, however: as the electorate's chief policymaker, the Legislature is much better equipped to balance any tension between the Constitutional command of just compensation and the plurality's concerns about the potential for arbitrariness.[32] The plurality's inability to articulate any way tort victims could satisfy the standard it proffers proves just how ill-suited courts are to the legislative function. But if there be a compelling need for a change, as the plurality suggests, policy choices like those implicated here are well within the Legislature's

---

[30] *See* TEX. CONST. art. III, § 66(b)–(c) (authorizing the Legislature by statute to "determine the liability for all damages and losses, however characterized, other than economic damages").

[31] *See, e.g.*, Michael J. Saks, Lisa A. Hollinger, Roselle L. Wissler, David Lee Evans & Allen J. Hart, *Reducing Variability in Civil Jury Awards*, 21 LAW & HUM. BEHAV. 243, 245-46 (1997) (discussing the use of damage caps and noting that they are "arbitrary" and "bear no relationship to the level of compensable harm suffered by a plaintiff"); David. M. Studdert, Allen Kachalia, Joshua A. Salomon, and Michelle M. Mello, *Rationalizing Noneconomic Damages: A Health-Utilities Approach*, 74 LAW & CONTEMP. PROBS. 57, 69 (Summer 2011) (critiquing the damage-schedule approach as "inherit[ing] whatever heuristics and inaccuracies attended those original valuations").

[32] *See Strickland v. Medlen*, 397 S.W.3d 184, 196 (Tex. 2013) (observing that the Legislature is best equipped to weigh and initiate broad changes to social and civil-justice policy); *Patel v. Tex. Dep't of Licensing & Reg.*, 469 S.W.3d 69, 95 (Tex. 2015) (Willett, J., concurring) ("Judicial duty requires courts to act judicially by adjudicating, not politically by legislating.").

wheelhouse.  In fact, the "rationally connected" standard the plurality advocates proves the point because it was cribbed from the statute imposing caps on medical-malpractice damages.[33]  While any legislatively imposed constraints on compensatory noneconomic damages would necessarily be arbitrary,[34] a legislative approach would at least offer Texans a path to participate in the decision-making process.  The plurality's approach would shape policy through hamster-wheel litigation.[35]  That is a cure worse than the disease.

The plurality opinion would effect a sea change in the law without providing any reasonably defined parameters.[36]  More questions are

---

[33] *Compare ante* at 3-4 ("The plaintiff in a wrongful death case should be required to demonstrate a rational connection, grounded in the evidence, between the injuries suffered and the dollar amount awarded."), *with* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, .11(b)(2), 2003 Tex. Gen. Laws 847, 873-75, 884 (enacting medical-malpractice caps on non-economic damages with current version at TEX. CIV. PRAC. & REM. CODE §§ 74.301–.303 and stating the legislative purpose for enacting the statute was to "ensure that awards are rationally related to actual damages").

[34] *See Lucas v. United States*, 757 S.W.2d 687, 689-90 (Tex. 1988).

[35] *See supra* note 17 and accompanying text.

[36] Contrary to the plurality's assertion otherwise, the requirement of a "*rational connection* between the amount awarded and the evidence of injury," *ante* at 4 (emphasis added), is a clear transition from the requirement that there must be "*some evidence* to justify the amount [of mental anguish damages] awarded," *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (emphasis added).  The plurality cannot point to authority from this Court or any other that has ever required claimants to establish a "rational connection" between noneconomic damages and the amount awarded.  "Rational connection" is a concept tied to legislative actions, such as in policy statements for legislative enactments, *see supra* note 31, and cases evaluating the constitutionality of legislative caps on noneconomic damages, *see, e.g.*, *Lucas*, 757 S.W.2d at 694-95; *Verba v. Ghaphery*, 552 S.E.2d 406, 413-15 (W. Va. 2001) (Starcher, J., dissenting); *State ex rel. Ohio Acad. of Trial Laws. v.*

raised than even the plurality can hazard to answer. While I don't think we should ever impose a change in the law that we cannot reasonably explain, I certainly would not do so in a case destined for a new trial for other reasons.

With much respect for my colleagues' diligent work on a difficult and confounding question, I cannot join an opinion that does so much and so little at the same time. However, I agree that defense counsel's improper jury argument could have influenced the damages award, and I join the judgment remanding for a new trial because the jury charge erroneously excluded a responsible third party.

John P. Devine
Justice

**OPINION FILED:** June 16, 2023

---

*Sheward*, 715 N.E.2d 1062, 1092 (Ohio 1999); *Butler v. Flint Goodrich Hosp. of Dillard Univ.*, 607 So. 2d 517, 520 (La. 1992).